MERCANTILE CREDIT GUARANTEE CO. OF NEW YORK v. WOOD et al.

(Circuit Court of Appeals, Second Circuit. May 28, 1895.)

CREDIT INSURANCE—MEANING OF "LOSS."

A policy of credit insurance insured the holder, to an amount not exceeding $10,000, against "loss sustained by reason of the insolvency of debtors owing the insured for merchandise." It also contained, besides various provisions as to loss to be first borne by the insured, other insurance, limitation of loss on individual debtors, disposition between insurer and insured of debts on which settlements were made or offered, etc., a provision that "in adjusting losses, * * * before determining the percentage of loss to be borne by the company, there shall first be deducted all sums paid, offered, and accepted, settled or secured, and the value of any security or collateral * * *." *Held,* that the "loss" insured against meant, not the whole amount due from an insolvent debtor at the time of his suspension, but the amount remaining due after deducting from such indebtedness any payments made by the debtor, and that a clause in the policy providing that when only a part of a loss was covered by it the proportionate part of everything realized should be credited to so much of the loss as the policy covered, did not change such meaning, but if said clause did not refer to the case of other insurance, and introduced an ambiguity, the doubt should be resolved against the insurance company, which prepared the policy.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Charles F. Wood and others against the Mercantile Credit Guarantee Company of New York on a policy of insurance. In the circuit court, judgment was rendered for the plaintiffs. Defendant brings error. Affirmed.

This is a writ of error by the defendant below to review a judgment in favor of the defendants in error (plaintiffs below) entered upon a verdict recovered upon a trial in the circuit court, Southern district of New York, on October 26, 1894. The action was brought to recover the sum of $5,627.65 and interest, claimed by the defendants in error, partners in business under the firm name of Charles F. Wood & Co., under a policy of insurance executed by plaintiff in error, which insured the plaintiffs against loss sustained by reason of the insolvency of debtors owing the insured for merchandise sold and delivered. There was, upon the trial, no dispute as to the facts. The only controversy in the case was one of amount,—the amount for which a verdict should be directed for the plaintiffs. The defendant asked that the verdict be for the sum of $1,109.92 only, which amount the defendant admitted to be due on the policy, which motion was denied by the court. The plaintiffs asked for a verdict for $5,108.09 and interest, which motion was granted, and verdict directed accordingly. The assignments of error are—First, to the admission of certain evidence; second, to the court's refusal to direct verdict in accordance with defendant's request; third, to direction of the verdict for the amount asked by plaintiff. The first of these assignments has not been argued in this court. It has apparently been abandoned, and need not be considered.

A. J. Dittenhoffer, for plaintiff in error.

Albert Stickney and David Murray, for defendants in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). It will not be necessary to go into any elaborate analysis of the computations by which the losses sustained under this policy were adjusted. The main controversy is as to the interpretation of the word "loss," as used in the policy. The defendant contends that it means the amount of indebtedness due from the insolvent at the time of his suspension or failure. The plaintiffs contend that the word "loss" means, not the amount of indebtedness due from the insolvent debtor at the time of his suspension, but the balance of such indebtedness after deducting from the entire indebtedness the payments made by the debtor prior to adjustment under the policy; such balance only being, as plaintiffs claim, the amount actually lost by the insolvency of the debtor. The circumstance that the policy contains limitations as to the amount of loss by reason of the insolvency of each particular debtor for which the insurance company agrees to respond makes it necessary to determine which construction is the correct one. For example, if the debtor fails owing $15,000, and subsequently pays $10,000, and the policy limits the company's liability for loss sustained through him to $7,500, shall it pay $15,000, the whole debt, less $10,000, the payment on account, which difference equals $5,000, or shall it pay $7,500, the amount of risk it took, less $5,000, the proportionate part of the debtor's payment when distributed between the amount of the company's risk and the amount of credit extended to the debtor in excess of such risk, —a difference which, in the case assumed, equals $2,500? To determine this question it is necessary carefully to analyze the entire policy. For a consideration expressed, the company "insures Chas. F. Wood & Co., to an amount not exceeding $10,000, against loss sustained by reason of the insolvency of debtors owing the insured for merchandise * * * sold and delivered, in the regular course of business," between certain dates. "Loss by reason of the insolvency of debtors owing for merchandise," in the ordinary use of common speech, means such money thus owed as the insolvency of the debtor has prevented the creditor from collecting. If, notwithstanding the insolvency, the debtor pays a part of his debt, it is the unpaid portion only which is lost by reason of his insolvency. The clause above quoted limits the total liability of the company, in any event, to $10,000. Other limitations are provided for in the ensuing clauses. It is therein provided that the loss insured by defendant company is the loss sustained "in excess of the face of a bond of the American Credit Indemnity Company for the same term for $10,000, and also the initial loss stated therein, viz. one per cent. on the total gross sales and deliveries," etc. It is agreed by both sides that this so-called initial loss is $4,519.57. Therefore, there can be no recovery by the assured, under the policy in suit, unless the losses sustained, and which are within the terms of the policy, exceed the sum of $14,519.57 (the initial loss and the American Credit policy), and then only for such excess. The policy next provides that the defendant shall be liable only for losses which shall

be sustained on sales to debtors rated, both as to capital and credit, in a specified mercantile agency, and then limits defendant's liability to respond for individual losses by reason of persons thus rated as follows:

"Such losses to be included in the calculation of losses hereunder to an amount not exceeding thirty per cent. (30%) of the lowest capital rating of such debtor, according to the rating given him by the said mercantile agency, but in no case to exceed $7,500 upon any debtor."

By a rider annexed to the policy it is further provided that during the continuance of the bond of indemnity issued by the American Credit Company to Charles F. Wood & Co. for $10,000, with a $7,500 individual limit—

"The limit to any one debtor who, according to his or their capital and credit rating, would be entitled thereto, within the terms of this policy, is increased to not to exceed $15,000, upon the condition, however, that this company shall in no case be liable for any one individual loss exceeding $7,500, but that $7,500 is to follow after loss by same debtor of the full $7,500 individual limit named in said bond of indemnity of the American Credit Indemnity Co., or so much of it as may remain unexhausted."

In none of these clauses restricting liability is there anything tending to show that the phrase, "loss by reason of the insolvency of debtors," is intended to express any other than its ordinary meaning. The next paragraph is as follows:

"In consideration of the unsettled debts included in the calculation of losses remaining the exclusive property of the insured, twenty per cent. shall be deducted from the gross amount of said unsettled debts, subject to the right of the company to have an assignment of those unsettled debts, on which an amount or settlement offered by debtors has not been accepted by the assured, on payment of the net amount thereof by this company, without such twenty per cent. deduction, or such portion of such debt or debts as shall be covered by this policy, or said company may deduct the said amount or settlement offered in calculating losses thereunder, and leave such debts the property of the insured."

The following paragraph, which is found on a subsequent page of the policy, should be read in this connection:

"It is agreed that 'unsettled debts' means losses on which the debtor has not made settlement and been discharged, but no such settlement shall be considered discharged that has not paid the insured at least twenty per cent. Where less than twenty per cent. settlement has been made, it shall be calculated as if the insured had received that amount."

In the case at bar, claim is made for the loss sustained by the insolvency of four different debtors, with each of whom a settlement was effected by the insured, and the debtor discharged, upon the payment of more than 20 per cent. in each instance. The provisions above cited as to "unsettled debts," therefore, do not apply.

The policy next contains clauses requiring the insured to notify the company, on its notice of loss blanks, of the insolvency of any debtor, within 10 days after the insured receives information of insolvency, and that verified proofs of loss, on the blank forms of the company, must be presented within a specified time, "giving in de-

tail the losses sustained, and the facts which bring them within the terms of this policy"; that the insured will give such other information as may be required, will submit to oral examination, and permit an inspection of books, papers, etc. Then follows this paragraph:

"In adjusting losses under this policy, and before determining the percentage of loss to be borne by the company, there shall first be deducted all sums paid, offered, and accepted, settled or secured, and also the value of any security or collateral held by the insured, and all credits, trade discounts, and allowances to which the debtor was entitled, had the debt been paid at the time of the failure; also all cash discounts to which the debtor would be entitled at the time the company settles with the insured."

In plain, direct, and positive language, this paragraph indicates that what the company is to respond for is the net actual loss sustained by the insured, not the original indebtedness at the moment of insolvency, but so much of it only as is not made up to the insured by payments or settlements, or what he may realize from securities or collaterals. All thus received by him is to be first deducted, and afterwards the loss,—i. e. the real loss sustained will be adjusted, and the percentage of such loss to be borne by the company determined,—upon consideration of the restrictions as to the amount of individual indebtedness, the existence of other insurance, and what not. The policy then provides that when an offer of a debtor has been deducted, and the assured does not realize through such settlement the amount of the offer, then such debt shall be readjusted, the same as though such offer had not been made, provided that such settlements or refused offers are noted in writing at the time of adjustment, and the debtor's estate closed and deficiency ascertained within three months from the date of expiration of the policy. Next follows the clause upon which the plaintiff in error relies, and which will be quoted and discussed hereafter. Other clauses regulate the time within which losses shall be adjusted and paid, the time of commencing suit, the effect of fraud, concealment, or misrepresentation in obtaining the policy, and of failure to inform the company of additional insurance, and the result of the insured's ceasing to carry on business, or of his transferring it to another. It is further provided that in the event of the insured holding any other insurance the company shall not be liable for a greater proportion of the losses covered by the policy than the amount of the policy shall bear to the whole amount of insurance. The policy then defines the term, "loss sustained by the insolvency of debtors," and declares that it is "agreed to mean losses upon sales made by the insured to debtors who have made a general assignment for the benefit of their creditors, or who have been declared insolvent in legal or judicial proceedings, or whose business has been sold by the sheriff, marshal, or other public officer, under an attachment, execution, or other process, or against whom an execution has been returned unsatisfied upon a judgment obtained by the insured or some other creditor for sales of merchandise made during the period covered by the policy." It is apparent from this résumé of the elaborate document which evidences the contract between the parties that, except for the clause not yet quoted, there is noth-

ing to indicate that the word "loss" is used with any peculiar meaning. The clause on which plaintiff in error relies is as follows:

"When only a part of a loss is covered by this policy, the proportionate part of everything realized or secured by the insured shall be credited to so much of it as this policy covers."

It is contended that this clause requires the insured to apportion everything realized on account of indebtedness after insolvency, and before adjustment under the policy, in the proportion which the individual risk assumed by the company on the particular insolvent bears to the total debt of the insolvent at the moment of failure, on the ground that when the credit given exceeds the limit of individual risk "a part of the loss," only, is covered by the policy. If the words "loss" and "debt" are to be taken as interchangeable, the clause last quoted is susceptible of such interpretation, and, if standing alone, would tend to support the contention of the plaintiff in error. But there is nothing elsewhere in the policy to indicate that the phrases, "debt due at insolvency," and "loss sustained by reason of insolvency," are intended by the parties to mean the same thing, and, if the clause be given the meaning contended for, it is most flatly contradictory of the other paragraph quoted above, which provides that in adjusting losses, before determining the percentage of loss to be borne by the company, there shall first be deducted all sums paid or secured by the debtor. The result would be a contract ambiguous in its provisions as to adjusting losses and determining the amount to be paid by the insurance company; and as that contract is a voluminous document, prepared by the company, any ambiguity in its phraseology should be resolved against the draftsman. The clause under consideration may be susceptible of a construction which will not be contradictory of the paragraph providing that the loss sustained by the insured is to be determined by first deducting the amounts received on settlement. It apparently refers to cases where part of a loss is covered by one policy, and part by another. But if it cannot thus be brought into harmony with the rest of the contract, and the instrument, considered as a whole, is ambiguous touching the precise loss which the policy covers, that meaning is to be given to it which is most favorable to the insured. Allen v. Insurance Co., 85 N. Y. 475, and cases there cited. The meaning most favorable to the insured is expressed with clearness and precision in the earlier paragraph, whose provisions apply to the losses sued upon in this case, since no one of the four falls within the definition of "unsettled debts." In each instance the debtor made settlement and was discharged, and each settlement so made paid the insured more than 20 per cent. The adjustment of the several losses is as follows:

Sanford & Co.

| | |
|---|---|
| Total indebtedness | $10,158 03 |
| Received in settlement 27 per cent. cash | 2,740 40 |
| Loss sustained by reason of insolvency | $ 7,417 63 |

The liability of the company, however, for this loss, is limited by the provision as to "thirty per cent. of the lowest capital rating"

| | |
|---|---|
| to | $ 4,500 00 |

### E. E. Kipling.

| | | |
|---|---|---|
| Total indebtedness ..................................................... | $16,173 | 62 |
| Present value, when received, of notes accepted in settlement..... | 7,743 | 10 |
| | | |
| Loss sustained by reason of insolvency........................ | $ 8,430 | 46 |
| Deduct loss of the full individual limit named in policy of the American Credit Company.................................... | 7,500 | 00 |
| | | |
| Loss covered by policy in suit............................ | $    930 | 46 |

### Cottier & Son.

| | | |
|---|---|---|
| Total indebtedness .......................................... | $15,520 | 75 |
| Present value, when received, of notes accepted in settlement...... | 9,126 | 21 |
| | | |
| Loss sustained by reason of insolvency..................... | $ 6,394 | 54 |

—Which is not limited by either of the clauses as to individual liability.

### Goldsmith & Son.

| | | |
|---|---|---|
| Total indebtedness ......................................... | $605 | 33 |
| Received in settlement 50 per cent. cash......................... | 302 | 66 |
| | | |
| Loss sustained by reason of insolvency..................... | $302 | 67 |

—Which is not limited by either of the clauses as to individual liability.

### Recapitulation.

| | | |
|---|---|---|
| Sanford & Co............................................. | $ 4,500 | 00 |
| E. E. Kipling........................................... | 930 | 46 |
| Cottier & Son.............................................. | 6,394 | 54 |
| Goldsmith & Son........................................... | 302 | 67 |
| | | |
| | $12,127 | 67 |

| | | | |
|---|---|---|---|
| Initial loss ....................................... $4,519 57 | | | |
| Policy in American Company to be first exhausted ........................... $10,000 00 | | | |
| Less amount already credited against Kipling . loss............................ 7,500 00 | | | |
| | | | |
| | $2,500 00 | $7,019 | 57 |
| | | $5,108 | 10 |

This being the amount for which, with interest, verdict was directed in the circuit court, the judgment of that court is affirmed