AMERICAN CREDIT INDEMNITY CO. v. WOOD et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1896.)

1. PARTNERSHIP—EVIDENCE.
    It is not error, in an action between persons who sue as partners, and a third party, to permit persons, whose business relations with the alleged partners are intimate, to testify as to the apparent relations between them, although the partnership may have been constituted by indentures or other writings.

2. INSURANCE—WARRANTY IN APPLICATION—BURDEN OF PROOF.
    It is not necessary for the plaintiff in an action on an insurance policy to aver and prove the truth of representations, amounting to warranties, which are contained in the application only, and not in the policy itself; but it is incumbent upon the defendant, who relies upon the breach of such warranty, to allege it and assume the burden of proof.

3. CREDIT INSURANCE—IDENTITY OF INSURED—CO-PARTNERSHIP.
    A policy of credit insurance, issued to W. & Co., provided that it should cover only losses on sales of merchandise owned "by the indemnified." Held, that such provision did not require that the business of the indemnified should have been conducted, throughout the term of the policy, under exactly the same firm name, if the firm had been in existence, composed of the same members as when the policy was issued.

4. SAME—PROOF OF LOSS. ·
  A policy of credit insurance provided that proof of loss should be made within 20 days after knowledge of the insolvency of any debtor should have been received by the indemnified, and that final proof of loss should be given to the insurer within 20 days after the expiration of the policy. *Held*, that the former provision was intended only to afford the insurer prompt notice that a loss had happened, for the purposes of investigation and measures of protection, and that it was fully complied with by furnishing, within the required time, notice of the appointment of a receiver of the debtor's property in a creditor's suit, with a statement of the debtor's account, followed at the expiration of the policy by legal proof of the debtor's insolvency.

5. SAME—CONSTRUCTION OF POLICY—AMBIGUITY.
  In construing a policy of credit insurance, being an instrument prepared by the insurer, an ambiguity in its terms is to be resolved in favor of the insured; and if, by the introduction of a subsequent and obscure clause, difficult to understand, or requiring expert knowledge for its comprehension, the preceding clauses, plainly and unequivocally expressed, by which the initial loss of the insured is fixed, are nullified, the subsequent clause must be ignored.

6. SAME—OTHER INSURANCE.
  A provision in a policy of credit insurance that, where the insured shall hold other security or indemnity, the amounts realized therefrom shall be deducted before the loss under such policy shall be adjusted, does not entitle the insurer to deduct the proceeds of a policy in another company, which provides in terms that it shall not cover losses insured by the first company, but shall only attach when that company's policy is exhausted.

In Error to the Circuit Court of the United States for the Southern District of New York.

Horwitz & Herstfield (James L. Blair of counsel), for plaintiff in error.

Albert Stickney and Frank L. Crawford, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiffs entered upon the verdict of a jury. The action was, brought upon a bond, dated May 29, 1893, which was, in effect, a contract by the defendant to insure Charles F. Wood & Co., to the extent of $10,000, against losses for merchandise sold or to be sold by them during the year 1893, arising from insolvency of debtors. It also contained a clause covering losses on sales made by the insured since September 1, 1892, "provided that no account under extension at the time of payment of premium" should be included. It contained this recital:

"This bond is issued and accepted upon the condition that the terms and conditions printed or written by the company upon the back of this bond are accepted by the indemnified as part of this contract, as fully as if they were recited at length over the signatures hereto affixed."

Among the conditions are these:

"(4) Proof of loss must be made upon the blanks furnished and in the manner prescribed by said company, within twenty days after knowledge of the insolvency of any debtor shall have been received by the indemnified, or his or their agent; otherwise, such claim shall be barred." "(12c) Final proof of loss shall be forwarded to the central office of this company, upon the blanks furnished and in the manner prescribed by the company, within twenty days after the expiration of this bond; and the amount due by this company,

under final proof of loss, shall be adjusted and paid within sixty days after the receipt by the company of such final proof of loss."

The complaint set forth the bond, alleged compliance by the plaintiffs with its conditions, and alleged that the plaintiffs had sustained losses during the year 1893 upon sales made to three debtors subsequent to September 1, 1892, viz. Sanford & Co., Kipling, and Cottier & Sons, aggregating approximately the sum of $22,000. The answer admitted the execution of the bond as set forth, and, among other defenses, alleged that upon the application for insurance, and to induce the defendant to make the bond, the plaintiffs made certain representations, knowing the same to be false. It also alleged that the loss of Sanford & Co. was not provable, under the terms of the policy, because the account of that debtor was under an extension at the time of the making of the bond, and that nothing was recoverable in respect to the Kipling loss, because no proof of insolvency had been furnished by the plaintiffs to the defendant as required by the terms of the bond.

There are 44 assignments of error. We shall only attempt to consider those which have some color of merit.

It was a condition of the bond that the liability of the defendant should be limited to sales of merchandise "owned, sold, and delivered by the indemnified." There was an issue upon the trial whether the losses arising from sales made between September 1, 1892, and January 1, 1893, were not excluded by force of that condition. According to the testimony for the plaintiffs, although their firm name had been Charles F. Wood & Co. only since January 1, 1893, they had been co-partners carrying on the identical business under the name of Charles F. Wood during the period in question. There was testimony for the defendants indicating that John B. Wood and Elmer E. Wood did not become co-partners with Charles F. Wood until January 1, 1893. Several of the assignments of error relate to the rulings of the trial judge in admitting evidence and in instructing the jury relative to that issue.

It was not error to permit persons whose business relations with the alleged partners were intimate to testify as to the apparent relations existing between them prior to January 1, 1893. The usual proof of partnership is by the evidence of clerks, or other persons who have done business with the parties as partners; and, although the partnership may have been constituted by indentures or other writings, it is ordinarily not necessary, in an action between the partners and a third person, to produce them. Their declarations in transacting business with third persons may be given in evidence to prove their partnership, and the entries made in their books in the course of business are evidence of the same character, and equally competent. 2 Greenl. Ev. § 479; Colly. Partn. § 686.

The defendant requested an instruction to the jury, in effect, that all losses were to be excluded arising upon the sale of goods during that period, if the jury should find from the evidence "that said firm of Charles F. Wood & Co. was not in existence as a firm, composed of the same members, doing business under exactly the same firm name, as when said bond was written." The judge declined to give

this instruction, but modified it by striking out the words "exactly the same firm name," and gave it as modified. It was the manifest purpose of the bond to insure against losses the business concern which was described in the bond as "Charles F. Wood & Co., of No. 171 Broadway, New York." The firm name was used for the purpose of identifying the parties insured, and the business to which the insurance related. If the same parties had seen fit, the day after the execution of the bond, to change their firm name to that of Charles F. Wood, it cannot be doubted that the sales made by them under that name would have been covered by the bond. Those who composed the firm when the bond was made were the "indemnified," within the meaning of the condition. If they were the persons who owned and sold the goods during the period covered by the bond, and were carrying on the same business, the style of the co-partnership was of no consequence. The instruction was properly refused, and, as modified, was correct.

Many of the assignments of error are based upon the theory that the truth of various statements contained in the written application for the policy was in issue, that the plaintiffs were bound to a strict compliance with these statements, and that they were not entitled to recover if it appeared that any of the statements were untrue. Undoubtedly, these statements constituted warranties, because the bond recited that it was issued in consideration of the application; and the application offered the statements as a consideration, and warranted them to be true. A warranty in a policy of insurance is in the nature of a condition precedent, and devolves upon the insured, in an action upon the policy, the burden of averring performance in his pleading, and proving it strictly by his evidence. It has never been authoritatively decided, however, that this rule is applicable to representations contained in an application, which amount to warranties, and we are of opinion that it does not apply. It was assumed not to apply to such a case in Dwight v. Insurance Co., 103 N. Y. 341, 355, 8 N. E. 654; and it has been generally supposed that it is incumbent upon the defendant who relies upon the breach of such a warranty to allege it, and assume the burden of proof. Swick v. Insurance Co., 2 Dill. 160, Fed. Cas. No. 13,692; Geib v. Insurance Co., 1 Dill. 443, Fed. Cas. No. 5,298; Murray v. Insurance Co., 85 N. Y. 236. The rule requiring performance of warranties to be averred and proved was ingrafted into the law of insurance before it was customary for underwriters to require from the insured the full and detailed applications which are a feature of so much prominence in the modern contract,—especially in the contract of life insurance. The policy is the evidence delivered to the insured of the contract of the insurer, and ordinarily, of itself, constitutes complete evidence of the contract, while the application, although it may modify the contract, is in the nature of defensive evidence intrusted to the insurer for his protection. As a matter of pleading, if the policy is set forth, and compliance with all the conditions precedent recited in it is averred, there is no necessity for referring to the application, and the complaint or declaration is sufficient upon its face. Nothing is required to be proved which does not go to

support some necessary allegation in the complaint, and there seems to be no good reason which requires a plaintiff to assume the burden of proving affirmatively the truth of statements in an application not challenged by the defendant. As was said by the supreme court:

"The number of the questions now asked of the assured in every application for a policy, and the variety of subjects, and length of time which they cover, are such that it may be safely said that no sane man would ever take a policy, if proof to the satisfaction of a jury to the truth of every answer were made known to him to be an indispensable prerequisite to payment of the sum secured; that proof to be made only after he was dead, and could render no assistance in furnishing it. On the other hand, it is no hardship that, if the insurer knows or believes any of these statements to be false, he shall furnish the evidence on which that knowledge or belief rests. He can thus single out the answer whose truth he proposes to contest, and, if he has any reasonable grounds to make such an issue, he can show the facts on which it is founded." Insurance Co. v. Ewing, 92 U. S. 378.

In the present case the defendant not only did not, in its answer, set up any of the statements in the application as warranties, or allege any breach of warranty, but it admitted by its answer the execution of the policy as set forth in the complaint. By this admission it dispensed with the introduction of the application. Consequently, there was no issue as to the truth or falsity of any of the statements contained in it. Whether the plaintiffs were bound by the statements contained in it; whether it was permissible for them to show that the agent of the defendant who filled it out did not do so accurately, or inserted statements which they had not made to him; and whether the statements were shown by the evidence to be true or untrue,—were questions which were not within the scope of the issues on trial, and consequently none of the rulings which are challenged by the assignments of error could have been prejudicial to the defendant. The application was competent evidence for the purpose of meeting the defense of fraud by showing what representations were actually made by the plaintiffs; and it was also competent for them to show to what extent the statements contained in it were theirs, and to what extent they were really the statements of the defendant's agent. Except for this purpose, the application, and all the testimony in regard to it, had no legitimate place in the evidence. The questions of fact arising under the defense of fraud were submitted to the jury under correct instructions. If there was any error in the instructions in regard to the written application, it was error favorable to the defendant, and only the plaintiffs had reason to complain of them. It is proper to say, however, that inasmuch as the trial judge permitted the defendant to contest the truth of the statements in the application, entertained a motion for the direction of a verdict for the defendant, and, pursuant to its request for instructions, submitted to the jury the questions of fact relating to the breach of the warranties, we have carefully examined his rulings and instructions upon this branch of the case, and do not deem the exceptions taken by the defendant worthy of discussion.

Error is assigned that the trial judge left it to the jury to construe the meaning of the word "extension," as used in the clause

of the bond which provided that "no account under extension at the time of payment of premium" should be included in its protection. If the instruction was erroneous, it did the defendant no harm. The loss arising upon the account of Sanford & Co. was the only one to which the clause was applicable, and there was no evidence in the case tending to contradict the testimony for the plaintiffs that the apparent extension of credit given to that debtor upon a single item of his account was not an extension of the original term of credit, but was the exercise of an option by Sanford & Co. pursuant to the terms of the sale.

Error is assigned of the instructions to the jury in respect to the waiver by the defendant of proofs of the Kipling loss. The defense based upon the failure of the plaintiffs to make the proofs required by the policy is an utterly frivolous one. There was no question of fact for the jury, and upon the uncontradicted evidence the plaintiffs were entitled to an unequivocal instruction that they had furnished sufficient proof of loss. The facts were these: June 13, 1893, a receiver of the debtor's assets was appointed in a creditor's suit, and June 16th the plaintiffs sent to the defendant a proof of loss, on one of the blanks furnished by it, stating that the debtor had failed and made an assignment. June 21st they sent an amended proof of loss, upon the blanks furnished by the defendant, giving the date of failure; stating that, instead of an assignment, there was a receiver, and giving details of the debtor's account, and the amount remaining unpaid. At the same time they wrote the defendant, asking it to inform them if the proof was satisfactory, and whether it required any further particulars, or any other action on their part. July 8th the defendant acknowledged the receipt of proof, and informed the plaintiffs that, under the conditions of the bond, the loss could not be adjusted until the expiration of the bond. A final proof of loss, covering all the losses which had accrued under the policy during its term, was furnished to the defendant January 6, 1894, accompanied by an affidavit showing the insolvency of the debtor. After the final proof of loss was received, the defendant retained it, without making any objection, and in March, after making an examination of the books of the plaintiffs, repudiated any liability, upon the ground of fraud in obtaining the bond. · It is not contended for the defendant that the final proof was not in all respects a formal and sufficient proof. Its contention is merely that the plaintiffs did not comply with the provision of the policy which required them to make proof of loss within 20 days after the knowledge of the insolvency of the debtor. No better evidence of the supposed insolvency of the debtor could have been supplied than was furnished by the first proofs of loss. Those documents did not furnish legal proof of the insolvency of the debtor, but this was not requisite. The provision in respect to making legal proof of insolvency only applies to the final proofs. The other provision is intended, not to require formal proof of insolvency, but to afford the insurer prompt notice that a loss has happened, for the purposes of investigation and measures of protection. Occupying as it does the position of a surety, the insurer is entitled to subrogation, and, upon paying a loss,

is entitled to a transfer of the claim against the debtor. The meaning of the condition is that the defendant shall have prompt notification of a probable loss, and, in that behalf, shall have proofs within 20 days after the indemnified has reason to suppose a debtor to be insolvent. What was done by the plaintiffs was an ample compliance with both conditions in respect to proof of loss. Their earlier proof informed defendant of the failure of the debtor. Their final proof was in all respects sufficient.

Error is assigned of the court's refusal to charge the defendant's requests as to the measure of damages, or basis for the computation of loss. The court instructed the jury that if they found that the plaintiffs were entitled to recover for losses upon sales made before the 1st day of January, 1893, their verdict should be for the full amount of the bond, but, if they found that the plaintiffs were only entitled to recover for losses upon sales made during 1893, then the plaintiffs were entitled to recover $5,893.56. No error is assigned of the last instruction. As the jury found for the plaintiffs in the smaller sum, it is obvious that they disallowed all losses arising upon sales made prior to January 1, 1893. As the bill of exceptions has been framed, it is quite impossible to determine what basis was adopted by the judge or jury for the computation of the loss. In each of the requests in which the defendant submitted its theory of the measure of damages, there was included, besides a deduction of the initial loss of $4,000, an additional initial loss, which the defendant insisted was to be borne by the plaintiffs under one of the conditions of the bond. We are of the opinion that the clause in the bond under which this addition to the initial loss is sought to be imposed upon the plaintiffs was not intended to have that effect. The bond recites the indemnity to be—

"Against loss to the extent of, and not exceeding, $10,000 resulting from insolvency of debtors over and above a net loss of $4,000, first to be borne by the said indemnified on total gross sales amounting to $400,000 or less."

Among the conditions on the back is the following :

"(5) The basis of net loss fixed in this bond is one per cent. on total gross sales by the indemnified of $400,000, and, should such total gross sales exceed said amount, the net loss to be borne by the indemnified, under this bond, shall increase in like ratio."

Then follow various conditions in respect to provable losses, and after them the clause in question, which reads as follows:

"(12a) To simplify adjustment, and to avoid disputes, it is agreed that such sum of gross loss shall be the limit to be borne by the indemnified, as, less 25 per cent., will equal the agreed amount of annual net loss; all claims making up such said sum of gross loss to remain the property of the indemnified, the company relinquishing its claims, except as hereinbefore provided."

We are quite unable to determine what this provision means, unless it is intended to fix a temporary basis of adjustment in case the defendant should see fit to pay a loss before final adjustment, in order, by subrogation, to acquire control meanwhile of the claim against the insolvent debtor. If, however, it is capable of the construction which the defendant contended for, it is in plain antagonism to, and irreconcilable with, those provisions which make the

initial loss of the indemnified $4,000, or 1 per cent. on total sales. The bond, with its numerous conditions, being an instrument prepared by the insurer, we must apply to its construction the rule which was applied by this court in Guarantee Co. v. Wood, 15 C. C. A. 563, 68 Fed. 529:

"If the particular clause requiring interpretation cannot be brought into harmony with the rest of the contract, and the instrument, considered as a whole, is ambiguous touching the precise loss which the policy covers, that meaning is to be given to it which is most favorable to the insured."

If, by the introduction of a subsequent and obscure clause, difficult to understand, or requiring expert knowledge for its comprehension, the preceding clauses, plainly and unequivocally expressed, by which the initial loss of the indemnified is fixed, are nullified, the subsequent clause must be ignored. It cannot be permitted to operate as a snare to the unwary. The trial judge properly refused to charge the defendant's requests.

The judge also properly refused to instruct the jury as requested by the defendant in its fourth request. That request was based upon the following condition of the policy:

"(9) In all cases where the indemnified under this contract shall hold other security, guaranty, indemnity, or preference, or shall have instituted attachment or replevin proceedings against any insolvent debtor covered under this bond, the amounts realized therefrom shall be deducted before the loss under this bond shall be adjusted."

Subsequently to the issuing of the bond in suit, the plaintiffs obtained further insurance against loss from the Mercantile Credit Guarantee Company. By the terms of the policy of that company, it was distinctly provided that the policy should not attach to cover any losses insured by the defendant, but should only attach when the policy in suit was exhausted. The request related to the indemnity thus acquired by the plaintiffs, and prayed for an instruction, in substance, that the amount realized from it by plaintiffs should be deducted by the jury from the recovery for which the defendant was otherwise liable. Not being an indemnity for the same loss, the clause in question does not apply to it.

We have considered all the assignments of error which seem worthy of notice, and find none of them to be well founded.

The judgment is affirmed.