SLOMAN *v.* MERCANTILE CREDIT GUARANTEE CO.

1. INSURANCE—CREDIT GUARANTY—CONSTRUCTION OF POLICY.

A credit guaranty policy insured against loss sustained by the insolvency of debtors owing the insured for merchandise sold and delivered between April 1, 1893, and March 31, 1894, and provided that the policy should "expire" on the latter date. It further provided that the insured should notify the insurer of the insolvency of any debtor within 10 days after receiving information of the same; that final proofs of loss must be presented within 90 days after the expiration of the policy; and that no loss should be payable unless included in such proofs, except that, should the policy be renewed on or before its expiration, losses occurring after such expiration, on sales made during the existence of the policy, should be provable in the same manner as though occurring under the new policy. *Held,* that losses occurring after the expiration of the policy on sales made during its existence were recoverable, though the policy was not renewed, if final proof of loss was made as required.

2. SAME—PROOFS OF LOSS—INSTRUCTIONS.

The refusal to instruct the jury, in an action upon such policy, that the proofs of loss could not be taken as evidence of the matters therein contained, is not ground for reversal, where there was other uncontradicted evidence of the loss.

3. SAME—WHAT RECOVERABLE.

A claim consisting entirely of attorney's fees, expenses, interest, and protest fees is not within the terms of the policy.

4. TRIAL—INSTRUCTIONS—HARMLESS ERROR.

A judgment will not be reversed because a portion of the charge was open to misinterpretation, where it is apparent that no one was misled thereby.

ON MOTION TO MODIFY,

APPEAL—NEW TRIAL.

A case will not be remanded for a new trial where the appellee remits the only claims upon which error is assigned and sustained, on the ground that the verdict is still excessive,—especially where it is uncertain from the record that the verdict is excessive.

Error to Wayne; Frazer, J.   Submitted February 10, 1897.   Decided March 29, 1897.   Motion to modify denied April 27, 1897.

*Assumpsit* by Samuel A. Sloman and another against the Mercantile Credit Guarantee Company of New York on a policy of insurance.   From a judgment for plaintiffs, defendant brings error.   Affirmed on condition.

*Wisner & Harvey*, for appellant.

*Sloman & Groesbeck*, for appellees.

HOOKER, J.   This action was brought upon an insurance or guaranty policy, which provided that—

"In consideration of the sum of $72, hereby insures S. A. Sloman & Co., of Detroit, in the State of Michigan, to an amount not exceeding $2,000, against loss sustained by reason of the insolvency of debtors owing the insured for merchandise usually dealt in, sold and delivered in the regular course of business between the 1st day of April, 1893, and the 31st day of March, 1894, both inclusive, in excess of ¾ per cent. on the total gross sales and deliveries made during said period, subject to the terms and conditions printed below or attached hereto.   This policy shall expire on the 31st day of March, 1894."

The insured sent 9 notices of loss to the insurer before March 31, 1894, and 22 after that date, but within 90 days after such date.   Those last mentioned were admitted in evidence, subject to an objection "that these losses were not covered by the policy, and were not sent in during the life of the policy."

Under a request to charge, it is claimed that the court should have excluded from consideration by the jury all claims of loss not shown to have accrued before April 1, 1894.   The question discussed is whether the policy covers losses where the insolvency or act of the debtor which makes the debt a loss, within the meaning of· the policy, occurred after March 31, 1894, that being the date of the expiration of the policy; and counsel for the

plaintiffs argue that it cannot be reasonably said that the parties 'intended that the sales on the last day, viz., March 31st, should not be protected by the policy, as would be practically the case if the defendant's claim is the correct one. They (the plaintiffs) urge that the loss may occur afterwards, and that if the insured serves his notice within 10 days after learning of the loss, and makes his final proofs of loss within 90 days after the date upon which the policy expires, he may recover for a loss that occurs after such expiration. From that portion of the policy quoted, it is said that the losses to be covered are those that arise upon sales made between the first day of April, 1893, and March 31, 1894. There seems to be no dispute about this. In addition to that portion hereinbefore quoted, the policy provides that "the insured shall notify this company by registered mail  *  *  *  of the insolvency of any debtor, within 10 days after he receives information of the same;" also, "final, verified proof of loss  *  *  * must be presented  *  *  * within 90 days after the expiration of the policy;" and, again, "no loss shall be payable unless included in said proof of loss submitted within said stated period. Should, however, this company renew the policy, or issue a new one, on or before the expiration hereof, a loss occurring after such expiration, on a sale and delivery of merchandise made during the existence of this policy, shall be provable in the same manner as if it occurred under the renewal or new policy."

It is obvious that this policy contemplates a credit business, for there would be nothing to insure if it does not. The time and terms of credit are not fixed, nor can we indulge in any assumptions upon the subject beyond the inference that the usages of trade in this respect were expected to be followed. Of necessity, there would be sales made during a time immediately preceding March 31, 1894, upon which the plaintiffs would receive no indemnity under this policy if defendant's construction is to be adopted, unless insolvency should immediately follow the purchase. The sales made during the period are clearly

covered by the policy, and it is improbable that it was intended that the insured should be deprived of indemnity upon such sales; and, unless the policy clearly indicates such intent, the writing should not be so construed. The clauses which are said to give the policy such effect are the statement that "this policy shall expire on the 31st day of March, 1894," and the clause relating to renewals, already quoted. Under the several provisions quoted, the right to recover a loss depends upon the presentation of final, verified proof of loss within 90 days after the expiration of the policy. To this there is an exception, viz., in case a new policy or renewal is issued on or before the expiration of the old policy, in which case the intent is plain that the insured should be permitted to recover for a loss occurring after the expiration of the original policy, at any time when losses occurring under the renewal might be recovered. This appears from the last clause mentioned, and is dependent upon it; and it is not necessary to infer from that provision that losses occurring after the 31st of March are not *recoverable at all* unless by reason of the renewal. It is just as consistent to say (so far as this provision is concerned) that the loss occurring thereafter is limited to cases where proof is filed *within 90 days* as to say that they are *excluded altogether* unless the policy is renewed. This leaves the contention with no other support than the statement regarding the expiration of the policy, which is met by the improbability of the parties intending to take all substantial benefit away from the insured upon a considerable portion of the sales actually covered by the policy, and an extension of 90 days, or (perhaps more properly speaking) a limitation to 90 days, of the time within which proofs should be made regarding losses upon sales made during the life of the policy. We are of the opinion that the fairer view to take is that the provision in relation to the expiration of the policy refers to the time when sales, to be covered thereby, shall cease, and that it does not determine the time when losses must occur upon such sales, but that these shall be recov-

erable, regardless of that date, subject to the limitation as to final proof. This conclusion is justified by the rule that an ambiguity in an instrument is to be resolved against the draftsman, which is supported by authorities cited by counsel. See *Tebbets* v. *Guarantee Co.*, 19 C. C. A. 281, 73 Fed. 95; *Wallace* v. *Insurance Co.*, 41 Fed. 742; *Wadsworth* v. *Tradesmen's Co.*, 132 N. Y. 540; *Mercantile Credit Guarantee Co.* v. *Wood*, 15 C. C. A. 563, 68 Fed. 529; *Wisconsin Marine, etc., Bank* v. *Wilkin*, 95 Wis. 111; *Shakman* v. *U. S. Credit System Co.*, 92 Wis. 366. We think the court did not err in admitting proof of the losses which occurred after March 31, 1894.

The final proofs of loss were received in evidence against objection, and the court failed to instruct the jury (as requested) that such proofs could not be taken as proof of any fact therein contained. We are satisfied that such document was not proper evidence of the fact of loss, but, if there was not other evidence of loss upon each of the items submitted to the jury, counsel do not show or state the fact. No testimony was offered by defendant's counsel, and the *prima facie* case of plaintiff, not being contradicted, was sufficient evidence, and defendant was not injured by the failure to give this request. Counsel say that this document was assumed to be *prima facie* evidence of the claim, but we find testimony which supports it. Mr. Sloman testified, without objection, that the paper "correctly represents the insolvents' accounts and losses sustained," etc. Upon cross-examination he was examined at length upon the respective items.

The next important question raised relates to the alleged refusal to instruct the jury that "there must be borne by the plaintiffs losses amounting to $525 before the defendant's liability begins." The court did instruct the jury upon this subject. He said:

"It appears that, in estimating the losses under the terms of this contract, the amount of yearly sales which the plaintiffs were authorized to make, as far as this contract bears upon the losses in this case, was $70,000. It

also appears that there is to be deducted from these losses three-quarters of one per cent., according to the terms of this policy."

If it appeared that this meant three-fourths of 1 per cent. upon the losses, instead of upon $70,000, it would be erroneous; but there is everything to indicate that the plaintiffs' counsel made no such claim, and that all concerned understood the amount to be $525. Apparently, the court supposed that he was giving the substance of the request, as indeed he was if the amount was not in dispute. His attention was not called to the matter by exception or otherwise, and we should not reverse the case upon a technical construction of language if it misled no one.

Error is assigned on the refusal to direct the jury "that the loss claimed on A. S. McDonald's account was not a loss under the terms of the policy." Mr. Sloman said that it appeared that all that remained of this item consisted of attorney's fees, protest fees, and expenses, and sundry small claims, which McDonald would not recognize or pay, and which they did not care to litigate. Counsel say that this testimony shows that the entire claim was for attorney's fees, expenses, interest, and protest fees, and in no sense a claim for goods sold and delivered, and was not covered by the policy, and, furthermore, that it appears that in the computation it must have been allowed in full. It seems to be conceded by counsel for the plaintiffs that this was a claim for attorney and other fees, etc., and not a balance upon sales; and we think the evidence shows it. It does not appear that it was not included in the verdict, nor is its allowance in any way disputed by counsel. It is true that the court repeatedly said that attorney's fees could not be recovered, and it is not surprising that this subject should have been overlooked as to other items. We think, however, that the request should have been given, and this claim withdrawn from the jury.

We are of the opinion that the sale of the Burroughs &

McKinstry stock by the sheriff brought this claim within the terms of the policy. The claim against Webb was clearly so, under the execution returned unsatisfied, and the same is true of the Zabits claim, upon the report of the collection agency to which it was sent.

As there is reason to believe that the McDonald claim was included in the verdict, we feel constrained to reverse the judgment, and direct a new trial, unless the amount of said claim shall be remitted. The defendant should recover costs of this court. It is so ordered.

The other Justices concurred.

### ON MOTION TO MODIFY.

HOOKER, J. In this cause the defendant's counsel move a modification of the judgment, counsel for the plaintiffs having elected to remit the sum of $140.32, as permitted by the opinion filed. The motion is based upon the claim that, after deducting the sum of $140.32, the judgment is still greater by $107.18 than it should be.

The original brief of the defendant contains a computation purporting to show that plaintiffs sustained losses upon accounts against "rated debtors" of $375.36, and unrated debtors $500, making $875.36, from which the "initial loss" to be borne by plaintiffs, of $525, should be deducted, leaving, with interest added, $380.13 as the total, including the McDonald claim of $140.32, which being deducted, would leave $239.81 as the limit of defendant's liability. It is admitted that the question was not raised by an exception, but it is urged that, inasmuch as error was found upon another point, the court should have ordered a new trial, inasmuch as the judgment was clearly excessive after deducting the McDonald account of $140.32. If we accept the theory of defendant's counsel upon the law, we must then inquire whether the evidence in the case supports their claim that the verdict was excessive.

In defendant's original brief, counsel submit a table

which they assert to be correct. Whether it is or not depends on the version of each account being verified by the undisputed testimony. We are not only not referred to the pages of the record sustaining the defendant's contention as to all of these items, but the brief does not advise us that all of the testimony is included in the bill of exceptions. The brief filed on this motion is open to the same criticism. It gives a list of debtors that it says were rated, and states that the others were unrated, quoting appellant's statement of the case in the former brief as evidence of the fact, and stating that this was not disputed by counsel for the plaintiffs. As the case was presented, counsel for the plaintiffs had no occasion to dispute the accuracy of the statement, as its only importance was in connection with an assignment which was not based upon an exception. In the brief filed in opposition to this motion, it is disputed, and the claim made that a number of rated debtors are classed as unrated in defendant's table.

It is a general rule that error will not be presumed, but must be made to appear. The only error clearly shown involved $140.32, and we required plaintiffs to remit the amount or submit to a new trial. We are now asked to grant a new trial upon the statement of counsel that the verdict is excessive. If this record clearly showed that items were included in the verdict unjustly, it may be doubted if we should send the case back for a new trial, if error was not assigned upon them, inasmuch as counsel see fit to remit the only claims upon which error was assigned. Still less would we be justified in doing so where the record makes it uncertain that the verdict was excessive. It is the practice of this court to refrain from ordering new trials where the record is such as to enable it to eliminate the errors, and render a judgment for the items regarding which no error is shown. One of the most pernicious features of our jurisprudence is the opportunity afforded to defeated litigants to compel their oppo-

nents to follow cases up and down through various courts, until costs become the principal controversy, and the original causes of action merely incidents, and citizens hesitate to commence a petty justice's court case, lest it should ultimately involve them in financial ruin. Justice is practically denied to a large class of people. While it seems to be the policy of the law to allow this sort of thing, it has always been the practice of the courts to put an end to litigation as soon as the circumstances of the case will permit, with safety to the interests involved. The presumption is, as it should be, that justice was done in the circuit court; and, the contrary not being shown, we see no occasion to compel the plaintiffs to submit to another trial, upon a suspicion that the verdict was excessive.

The motion is therefore denied.

The other Justices concurred.