PEDEN IRON & STEEL CO. v. OCEAN ACCIDENT & GUARANTEE
CORPORATION, Limited.

(Circuit Court of Appeals, Fifth Circuit.   March 5, 1907.)

No. 1,559.

INSURANCE—CREDIT INSURANCE—POLICY—CONSTRUCTION.

A credit insurance policy provided that the gross aggregate of insolvent accounts coming within the provisions of the agreement to be taken into the calculation of losses under the contract was limited to $5,000, but that no account against any one debtor should be covered for more than

$3,000, and only 75 per cent. of the amount so covered on such accounts should be included in the calculation of losses under the contract. *Held*, that such clause was ambiguous, and, being construed in favor of the insured, meant that the liability of the guarantor was $5,000, and that the 75 per cent. provision applied only to the accounts of individual debtors which were limited to $3,000.

Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of Texas.

This is an action at law by the Peden Iron & Steel Company to recover indemnity under a policy of credit insurance issued to it by the defendant, the Ocean Accident & Guarantee Corporation, Limited, bearing date June 28, 1904. The answer was by general demurrer and general denial. The trial judge gave a peremptory direction to the jury, under which plaintiff's recovery was limited to $567.15, with interest. The plaintiff sued out writ of error.

The policy of insurance provided:

"In consideration of a guarantee fee of seven hundred and fifty dollars, receipt of which is hereby acknowledged, The Ocean Accident & Guarantee Corporation, Ltd., of London, England (hereinafter called the Corporation), guarantees as herein provided Peden Iron & Steel Co., of Houston, Texas (hereinafter called the Guaranteed), against actual loss to an amount not exceeding ten thousand dollars on such covered accounts as may be proved under the terms, conditions and limitations of this contract, which the Guaranteed may lose on bona fide sales, shipments and deliveries of merchandise (not including merchandise consigned for sale), made in the usual course of the Guaranteed's business of wholesale hardware and supplies, between the 25th day of June, 1904, and the 24th day of June, 1905, both days inclusive, in excess of an initial or own loss to be borne by the Guaranteed, being ⅓ of one per cent., but in no event to be less than $3,500 on the gross aggregate amount of all the Guaranteed's sales and shipments during that period in the United States of America, and in the Dominion of Canada; the said losses to have arisen from the insolvency of debtors occurring between the 25th day of June, 1904, and the 24th day of June, 1905, both days inclusive, of which insolvency notice shall have been sent to and on form supplied by the Corporation within fifteen days after knowledge of such insolvency shall have been acquired by the Guaranteed."

The amount of loss to be claimed was limited to:

"The accounts of debtors having the said required ratings shall be covered to an amount not exceeding 40 per cent. of their lowest capital rating, but no account against any one debtor shall be covered for more than $5,000. These limits shall apply to the amount which the debtor owes the Guaranteed at the time of the insolvency.

"Debtors Not Mentioned in the Agency Book: The accounts of debtors whose names are not mentioned in the designated book of the above specified Mercantile Agency shall also be covered if the debtor is given ratings as above required in the latest report issued by said agency within three months before shipment; or, if no report has been issued within three months before shipment then in the latest report issued by said agency, within three months after shipment; in that event the ratings in said report shall apply with the same effect as if they were printed in said agency book. Sales and shipments made after such debtor's name appears in the said Mercantile Agency Book shall be governed by the ratings given him in said book."

The policy further provided as a method of adjustment, in its lines 53 to 67, both inclusive, as follows:

"From insolvent accounts coming within the terms and conditions of this contract, which are settled at the time of adjustment. there shall be deducted in whole or pro rata, as the accounts are covered in whole or in part, all amounts received or made secure, whether as payments, dividends, goods returned or replevined, amounts realized or to be realized on securities or guarantees, or otherwise. From insolvent accounts coming within the terms and conditions of this contract, which are wholly or partly unsettled at the

time of adjustment, there shall be deducted in whole or pro rata as the accounts are covered in whole or in part, all amounts actually received or made secure as aforesaid, together with a percentage to be agreed upon between the Guaranteed and the Corporation for amounts yet to be realized on such accounts; but if no agreement mutually satisfactory should be arrived at as to such amounts to be realized, the Corporation shall allow the unpaid part of such accounts so far as covered, and shall then be entitled to an assignment thereof, together with all securities and guarantees held by the Guaranteed in such proportion as the amount covered on each account bears to the whole account.

"From the net loss thus ascertained is to be deducted the initial or own loss to be borne by the Guaranteed, and the remainder, if any, not exceeding the limit of guarantee, is to be the amount due the Guaranteed under this contract. In the event of the accounts transferred by the Guaranteed as above, netting in the aggregate an amount exceeding the sum paid to the Guaranteed under this contract, the Corporation shall refund the said net excess to the Guaranteed."

At the inception of the policy, and before its delivery, a memorandum agreement was indorsed thereon, by which it was, among other things, provided:

"That sales, shipments and deliveries to debtors, no part of whose accounts are otherwise covered under this contract, but who have ratings which do not conform to the ratings for both capital and credit, given in the schedule printed in the body of this contract, or who are rated 'blank' as to capital or credit or both, in the book of the within specified Mercantile Agency issued last prior to shipment; such book to be considered as having been issued on the first day of the month in which it is issued; also sales, shipments and deliveries made to parties whose names do not appear in the books of the within specified Mercantile Agency, but where reports of such Mercantile Agency show that these parties have been actively engaged in mercantile pursuits at the time of shipments; also sales, shipments and deliveries made to oil well contractors, where no reports are obtainable, but where evidence exists that they are bona fide oil well contractors, shall be taken into the calcu'ations of this contract. The gross aggregate of insolvent accounts coming within the provisions of this agreement to be taken into the calculation of losses under this contract, is limited to five thousand dollars ($5,000.00), but no account against any one such debtor shall be covered for more than three thousand dollars ($3,000.00), and only seventy-five per cent. (75%) of the amounts so covered on said accounts shall be included in the calculation of losses under this contract. These limits shall apply to the amount which the debtor owes to the Guaranteed at the date of insolvency. The net amount of losses on such debtors, thus ascertained, shall be added to the losses covered by the terms and conditions in the body of this contract, and shall be adjusted in accordance with the provisions in lines 53 to 67 of said contract. All other terms and conditions of the contract to remain in force."

On the trial it was admitted by written agreement:

"First: That the policy hereto attached was duly executed by the Ocean Accident & Guarantee Corporation, Ltd., and that the Peden Iron & Steel Company paid the premium thereon, and that the policy was in force at the time and for the term stated in its face as between the parties.

"Second: That no settlement has been made between the parties under the policy.

"Third: That one-third of one per cent. on the sale of Peden Iron & Steel Company for the period of the policy was in force amounts to $3,821.10, which is the amount designated in the policy as 'an initial or own loss to be borne by the Guaranteed.'

"Fourth: That within the class of accounts denominated 'rated accounts' in the policy the Peden Iron & Steel Company sustained a total loss during the period covered by the policy of $638.25 arising from insolvency of debtors, of which notice was duly given and received as required by the policy.

"Fifth: That in the class of accounts denominated 'unrated' and described in the rider attached to the policy, the Peden Iron & Steel Company sustained a total loss during the period covered by the rider of $10,278.32 arising

from insolvency of debtors, of which notice was duly given and received, and which losses apply to the amounts owing by the debtors to insured at the dates of insolvency and cover no loss against any one debtor for more than $3,000.

"Sixth: The right of arbitration granted in the contract to each party is expressly waived.

"Seventh: That a statement duly prepared and sworn to, of insured's claim for excess loss under said contract was regularly received on, to-wit: the ——— day of ———, 1905, as required by said policy, being more than sixty days prior hereto."

It was orally admitted on the trial:

"That the loss of $638.25 arising from rated accounts mentioned in the body of said policy came within the forty per cent. requirement in said policy in respect to lowest capital rating, and that the losses of $638.25 under the body of said policy and of $10,278.32 under the rider thereof were not subject to deduction under provisions of said policy relating to adjustments, for any amounts received or made secure as provided therein, but this admission has no application to the question of deduction vel non of the initial or own loss."

On the trial various exceptions were taken to the rulings of the court, and on them are based the following assignments of error:

1. "The Circuit Court, being the United States court for the Southern District of Texas, erred in refusing to admit in evidence, as an aid in constring the rider in question, under the objections of the defendant, the proposed testimony of the witness G. C. Gaines, to the effect, in substance:

"That there were preliminary verbal negotiations leading up to the insurance contract in question, in which the defendant was represented by J. H. Winkler, who was its authorized agent in that behalf, and at which witness, being an agent of the plaintiff, was present and participated; that the purpose on the part of the plaintiff in making the contract evidenced by the rider, as then told to defendant's agent, was that plaintiff, being about to make large sales, shipments, and deliveries to oil well contractors, who had no commercial rating, desired indemnity against losses from bad accounts with these customers; that in these preliminary negotiations it was mutually stated and understood that of the total indemnity of $10,000 one-half hereof, to wit, $5,-000, was to extend to and to be the maximum net indemnity to plaintiff arising from the class of accounts mentioned in said rider; that the talk and negotiations was, not that the three-fourths should apply to the $5,000 limit, but to the accounts themselves, which, if more than $5,000, should be reduced to that sum; that in the preliminary negotiations not a word was said or intimated that the initial or own loss mentioned in the body of the policy should in any event be deducted from such loss as might be sustained under the rider."

2. "The said Circuit Court erred, over the exception of plaintiff, in peremptorily directing the jury to return a verdict in favor of the plaintiff for the sum only of $567.15, with interest thereon at 6 per cent. per annum from January 1, 1906."

3. "The said Circuit Court erred in denying the plaintiff's prayer for a direction to the jury to return a verdict in favor of the plaintiff for the full sum of $5,000, with interest thereon at 6 per cent. per annum from the commencement of this suit."

4. "The said Circuit Court erred in denying plaintiff's prayer, separately and alternatively made, for a direction to the jury to return a verdict in favor of the plaintiff for the sum of $4,525.89, with 6 per cent. per annum interest thereon from the commencement of this suit."

5. "The said Circuit Court erred in denying plaintiff's prayer, separately and further alternatively made, for a direction to the jury to return a verdict in favor of the plaintiff for the sum of $1,817.15, with 6 per cent. per annum interest thereon from the commencement of this suit."

Presley K. Ewing and H. F. Ring, for plaintiff in error.
Frank Andrews, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The substantial controversy in this case is whether the insurance company's liability on unrated accounts is limited to $5,000 or to $3,750; in other words, whether the provision, "only 75 per cent. of the amount so covered on said accounts shall be included in the calculation of losses under this contract," applies to the accounts of individual debtors which are respectively limited to $3,000, or to the sum of $5,000, which is fixed as the limitation of the gross aggregate of insolvent accounts to be taken into the calculation of losses under the contract.

The agreement reads as follows:

"The gross aggregate of insolvent accounts coming within the provisions of this agreement, to be taken into the calculation of losses under this contract, is limited to $5,000, but no account against any one such debtor shall be covered for more than $3,000, and only 75 per cent. of the amount so covered on said accounts shall be included in the calculation of losses under this contract."

The plaintiff in error contends with great force that the above is ambiguous, and that he was entitled to show on the trial by parol evidence the verbal negotiations leading up to the contract, not to vary or reform the same, but to show the meaning and intention of the parties in relation to the alleged ambiguous provision. The contention on the other side is that the contract is perfectly plain and unambiguous, and needs only a careful reading to arrive at its true meaning. It may be remarked here for what it is worth that the contract is not so plain and unambiguous that any two of the judges of this court agree upon its precise meaning and application, and that, too, after several careful readings of the same.

The provision in question constitutes one sentence, and, if it is paraphrased, will read thus:

No account against any one such debtor shall be covered for more than $3,000, and only 75 per cent. of the amount so covered on said accounts shall be included in the calculation of losses under this contract, and the gross aggregate of insolvent accounts coming within the provisions of this agreement to be taken into the calculation of losses under this contract is limited to $5,000.

Written thus, there can be little difficulty in concluding that the 75 per cent. limitation applies to the individual debtors' accounts.

Again: The gross aggregate of insolvent accounts coming within the provisions of this agreement, to be taken into the calculation of losses under this contract, is limited to $5,000, and only 75 per cent. of the amount so covered on said accounts shall be included in the calculation of losses under this contract; but no account against any one such debtor shall be covered for more than $3,000.

As thus written, the construction might well be that the maximum liability of the guarantor on unrated accounts would be 75 per cent. of $5,000, to wit, $3,750.

If we analyze the sentence, we find contained therein the following provisions, and in this order, to wit: (1) The gross aggregate of insolvent accounts coming within the provisions of this agreement to be taken into the calculation of losses under this contract is limited to $5,000. (2) No account against any one debtor shall be covered for more than

$3,000.    (3) Only 75 per cent. of the amount so covered on said accounts shall be included in the calculation of losses under this contract.

Stated in this way, it seems clear that the 75 per cent. applies to the amounts described as "covered"; that is, to the individual debtors' accounts.    In this connection it may be noticed that the only debts, accounts, or amounts spoken of as "covered" in the entire memorandum or rider are the accounts of individual debtors, "which shall not be covered for more than $3,000," and the words immediately following "so covered" may well be taken as referring to such individual debtors' accounts.

If it was intended by the parties that the maximum liability of the guarantor on unrated accounts was to be $3,750, why was not plain language to that effect used in the contract, instead of the involved propositions from which it is attempted to adduce such result?    Enough has been said to show that the meaning of the sentence in question is not plain but is ambiguous and doubtful, and we find nothing in the main body of the policy nor in the memorandum or rider attached to relieve the ambiguity.    The insured might well have understood on reading the said sentence that under the rider he was insured for $5,000 on unrated accounts.

The learned counsel for the plaintiff in error contends that it is thoroughly settled that these credit guarantors are insurance companies subject to the rules of law which pertain to the latter; and, the language of the policy being their language, it must be construed most strongly against them, so that in any case of doubt arising from ambiguity in words or expression the doubt must be resolved in favor of the insured.    And he cites, in support, American Credit Indemnity Co. v. Adams' Woolen Mills, 92 Fed. 581, 584, 34 C. C. A. 161; Mercantile Credit Guarantee Company v. Wood, 68 Fed. 529, 533, 15 C. C. A. 563; Goddard v. Insurance Co., 67 Tex. 69, 71, 1 S. W. 906, 60 Am. Rep. 1; People v. Mercantile Credit Guarantee Co., 60 N. E. 24, 26, 166 N. Y. 416; Brown v. Palatine Ins. Co., 89 Tex. 595, 35 S. W. 1060; American Credit Indemnity Co. v. Wood, 73 Fed. 81, 19 C. C. A. 264 (note).    The learned counsel for the defendant in error frankly admit that where an insurance contract, ambiguous and not plain in its terms and conditions, is capable of two constructions, the construction most favorable to the insured will be adopted.    This admission relieves us from the necessity of discussing the question, and leaves us free to hold, as we do, that under the proper construction of the provision in the rider above mentioned the maximum liability of the guarantor is $5,000.    And this holding renders it unnecessary to pass upon the first and second assignments of error relating to the rejection of evidence.

Plaintiff in error further contends that the provision in the rider, to wit, "the net amount of loss on such debtors thus ascertained shall be added to the losses covered by the terms and conditions in the body of this contract, and shall be adjusted in accordance with the provisions in lines 53 to 67 of said contract," should be construed as though the words "as far as practicable" were written therein, and that accordingly, as there was no loss on rated accounts equal to the initial loss provided for in the contract, the said initial loss is irrelevant and immaterial and so far inapplicable, and not to be taken into consideration in deter-

mining the loss on unrated accounts; and therefore, as the loss on unrated accounts exceeded the amount of the guarantor's liability thereon, the plaintiff in error is entitled to a judgment for the full amount of the limit. If this contention cannot be maintained, the plaintiff in error further contends that the proper adjustment under the contract would be to deduct the initial loss from the combined loss on rated accounts under the policy and on unrated accounts under the rider, which would leave $4,525.89 as the proper amount for plaintiff in error to recover. Neither of these contentions is well founded. With the exception of the involved sentence in the rider (the matter heretofore discussed), the policy and rider attached are plain and unambiguous. In fact, there is only one policy in the case. Under that, as we construe it, the liability of the guarantor to the insured is limited to $10,000 on both rated and unrated accounts, the liability on unrated accounts not to exceed $5,000. The initial loss of one-third of one per cent. on the whole business of the insured is to be deducted from the net loss on insolvent accounts coming within the terms of the agreement before any liability of the company can attach. The method of adjustment is specially provided for in the lines 53 to 67 of the contract, and it is adopted and made applicable by the last provision in the rider. Under the agreed facts, there was a loss on rated accounts of $638.25, and on unrated accounts, as we construe the contract, of $5,000, both to be taken into the adjustment. These losses aggregate $5,638.25, which we hold to be the net loss under the policy and ascertained in accordance with the terms thereof. The contract provides that from the net loss thus ascertained is to be deducted the initial or own loss to be borne by the insured, and the remainder, if any, not exceeding the limit of guarantee, is to be the amount due the insured. Applying this plain provision, we deduct from the net loss $5,638.25, the initial loss, one-third of 1 per cent., agreed to be $3,821.10, leaving a balance of $1,817.15; and this is the amount for which the plaintiff below is entitled to judgment.

The judgment of the Circuit Court is reversed, and the cause is remanded with instructions to grant a new trial.

SHELBY, Circuit Judge, dissenting.