JAECKEL v. AMERICAN CREDIT INDEMNITY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 25, 1898.)

1. INDEMNITY INSURANCE—LOSSES FROM INSOLVENT DEBTORS—CONDITIONS OF POLICY.
    An indemnity policy against losses from insolvent debtors provided that proofs of loss must be made within 20 days after knowledge of the insolvency of any debtor shall have been received by the indemnified, and also that the first losses, up to a certain sum, should be borne by the indemnified, before any claim could be made against the company. Held, that the company is entitled to receive the stipulated notice of the first losses, making up the initial loss which the indemnified agrees to bear.

**2. Same.**

The provision of an indemnity policy against losses from insolvent debtors, that final proofs of loss shall be forwarded, and the amount due thereunder shall be adjusted and paid within 60 days after receipt of such proofs, does not permit the deduction from the amount due on the policy of a payment on account by an insolvent debtor within the 60 days, especially since the policy limits the benefits the indemnified may receive by a provision that no loss can be proven after. the expiration of the policy.

**3. Same.**

A policy of indemnity against losses from insolvent debtors named $3,750 as the initial loss to be borne by the indemnified, and provided that claims going to make up such loss should belong to the indemnified. It further provided that, when claims should be allowed by the company beyond the amount agreed to be borne by the indemnified, such claims should at once be transferred to the company, which should become the owner thereof to the amount paid on such claims, provided that, where the indemnified had a part interest in any one of such claims, the amounts realized therefrom, less cost of collection, should be divided pro rata. *Held*, that such provisions were not nullified by a subsequent clause providing that to simplify adjustment "such sum of gross loss shall be the limit to be borne by the indemnified, as less 25 per cent. will equal the agreed amount of annual net loss; all claims making up such said sum of gross loss to remain the property of the indemnified, the company relinquishing its claims except as hereinbefore provided"; since such clause is so obscure as to require expert evidence to explain its meaning.

**4. Same.**

Adopting the company's interpretation of the latter section, it only grants the indemnified an option to increase his initial liability, and hence the company cannot rely on it where plaintiff has not chosen to exercise such option.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from judgment on report of referee.

Action by Hugo Jaeckel against the American Credit Indemnity Company of New York. From a judgment entered on the decision of a referee for plaintiff, defendant appeals. Modified and affirmed.

This action is brought upon a policy of credit insurance, which guaranties "the said indemnified against loss to the extent of and not exceeding fifteen thousand dollars, resulting from insolvency of debtors over and above a net loss of thirty-seven hundred and fifty dollars, first to be borne by the said indemnified on total gross sales and deliveries of goods, wares, or merchandise amounting to $1,000,000 or less, said sales and deliveries to be made * * * between the first day of July, 1893, and the thirtieth day of June, 1894, both days inclusive." The premium was paid by the plaintiff on July 21, 1893. The policy expired June 30, 1894, and proof of loss was sent July 31st. The policy provided that the company is allowed 60 days thereafter in which to investigate claims and to make adjustment. The sum for which suit was brought was $2,874.39, obtained by adding losses incurred as follows: By failure of McNamara Dry-Goods Company, $691.20; of Lally & Collins, $1,212.72; of Conrad & Sons, $642.40; of Abel & Sons, $683.73; and of Knable & Cooper, $3,394.34; and by deducting therefrom the initial loss of $3,750 to be borne by the indemnified. The referee disallowed the claim by failure of McNamara Dry-Goods Company, because, although the policy dates from July 1st, this loss occurred July 18th, before the premium was paid on July 21st, and a condition of the policy requires payment of premium before any loss can be considered. The referee further deducted $61.86, an amount paid by Knable & Cooper subsequent to their failure, which amount, by condition 12b of the policy, should be credited to the defendant as salvage in claims exceeding those which made up the initial loss. Lastly, the referee deducted $217.34, an amount paid by Lally & Collins subsequent to their failure, but before the policy had expired. He thus rendered a de-

cision for $1,903.99 in favor of the plaintiff. With regard to the claim of Lally & Collins, it appears that condition 4 of the policy requires a notice of loss to be sent to the company within 20 days after knowledge thereof, and that the plaintiff received knowledge of the failure of that firm on November 27th, but sent no notice until December 21st. The referee held that, as this loss was part of the initial loss to be borne by the plaintiff, the condition requiring 20 days' notice did not apply to it. In considering the claim made for loss by failure of Abel & Sons, the referee made no deduction for a payment of $373.63 made September 12th, after final proof of loss had been sent, but before final adjustment by the defendant; holding that the claims against the defendant accrued June 30th, and that its liability must be determined by the conditions existing when the final proofs of loss were submitted, namely, on July 31st. The referee also held that no deduction should be made for payments subsequently received from Abel & Sons and from Conrad & Sons, on the ground that the defendant's liability had become fixed, and that, as the loss arising from the failure of these firms was a part of the initial loss, such subsequent payments belonged to the plaintiff. In arriving at his conclusions the referee discarded as obscure and unintelligible condition 12a of the policy, by which the defendant claimed that the initial loss of the indemnified, stated in the policy at $3,750, was increased to $5,000. From the judgment entered on the referee's decision the defendant appeals.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

John V. Bouvier, Jr., for appellant.
Benjamin N. Cardozo, for respondent.

O'BRIEN, J. This appeal is brought upon disputed construction and interpretation of the conditions of the policy, and not upon disputed facts. The first construction called for is as to condition 4 of the policy, which states:

"Proof of loss must be made * * * within twenty days after knowledge of the insolvency of any debtor shall have been received by the indemnified; * * * otherwise such claim shall be barred."

The appellant holds that, as such notice was not given of the failure of Lally & Collins, the loss thereby incurred should be excluded from consideration in the settlement of liability. The respondent, although admitting the force of this contention, insists that this particular loss should not be included under this condition because of another condition in the policy. The other condition referred to is that the first losses, up to a certain sum, should be borne by the indemnified, before any claim could be made against the company. The respondent's position, allowed by the referee, is, therefore, that the loss by failure of Lally & Collins, being a first loss, and less in amount than the initial loss agreed to be borne by the indemnified, was not a "claim" against the company, nor a "loss" for which the company was liable, and therefore is not included under condition 4, requiring notice of loss to be sent within 20 days. We are unable to agree with this holding of the referee, for the reason that, as this loss had to be taken into consideration in the final settlement, the company was entitled by its agreement to learn of it, as well as of all other losses, within the time stipulated. Such seems to be the fair and reasonable construction, and the one in accord with the spirit of the agreement; otherwise, the company could not insist upon knowledge of the failures making up the initial loss to be borne by the indemni-

fied, excepting as they were subsequently proved as facts on the final settlement. This construction would shut off the company from proper and timely inquiry into the failures and losses presented, and would open the door to fraud on the part of the indemnified. There is nothing, moreover, in the language quoted from condition 4, or in any other part of the policy, excluding from the time limitation losses or claims going to make up the initial loss. We think, therefore, that the company was entitled to receive the stipulated notice of the loss by the failure of Lally & Collins, as of all other losses, and it follows that, if such notice was not given, this claim should be excluded in the settlement of the defendant's liability.

A second question of construction is presented by the contention of the appellant that the payment of Abel & Sons of $373.63, made September 12th, should be deducted from its liability, because of condition 12c of the policy, which states:

"Final proof of loss shall be forwarded to the central office of this company. * * * and the amount due by this company under final proof of loss shall be adjusted and paid within sixty days after receipt by the company of such final proof of loss."

The defendant contends that, the final proof of loss being sent July 31st, and 60 days thereafter being allowed to adjust the same, a payment made September 12th, before such adjustment, should be deducted. This contention cannot be sustained, for, as stated by the referee, the claim against the company had accrued, and we must hold that the 60 days for adjustment was given, as indicated by the company's letter of August 2d, to give time "to investigate claims" filed, and not to give time for further payments to be made, and thus better the condition of the company. If, as the defendant claims, this payment should be deducted from the liability, the company could have demanded 60 days after final proof of its payment was accepted, and in this way delay final settlement. It was, moreover, provided by condition 8 in the policy that "no loss can be proven after expiration of this bond," and the defendant may not, on the one hand, receive benefit from subsequent payments, and, on the other, suffer no increase of liability for losses during the period granted for adjustment. We must hold, therefore, that the referee was right in not deducting this payment.

The most serious question of construction arises on this appeal as to the agreement made regarding the exact amount of initial loss to be borne by the indemnified; the appellant contending that it should be greater than the $3,750 admitted by the referee. Subsidiary to this determination, and depending upon it, is the question of what understanding existed regarding salvage in the insolvent claims. It is stated in the policy that $3,750 is the initial loss to be borne by the indemnified, and, by a further condition, that claims going to make up such loss shall belong to the indemnified. This latter condition is 12b, which states:

"When claims shall be allowed by this company beyond the amount agreed to be borne by the indemnified, such claims shall at once be transferred to this company, and this company shall become the owner thereof to the extent of the amount paid on such claims: provided, however, that where the in-

demnified has a part interest in any one of such claims the amounts realized therefrom, less cost of collection, shall be divided pro rata, as the interest of each may appear."

The defendant, however, alleged that there was an agreement —namely, condition 12a of the policy—by which the company relinquished its right to salvage in claims on condition that the initial loss to be borne by the indemnified should be $5,000, instead of $3,750. This condition was discarded by the referee as obscure and unintelligible, and the case of Indemnity Co. v. Wood, 19 C. C. A. 264, 73 Fed. 81, was cited in support of his ruling. The condition discarded by the referee and brought before us on this appeal states:

"To simplify adjustment, and to avoid disputes, it is agreed that such sum of gross loss shall be the limit to be borne by the indemnified, as less 25 per cent. will equal the agreed amount of annual net loss; all claims making up such said sum of gross loss to remain the property of the indemnified, the company relinquishing its claims, except as hereinbefore provided."

If this condition (12a) be disregarded, then the referee is right in giving the plaintiff salvage in claims making up the initial loss in accordance with condition 12b. It is admitted that condition 12a is framed in obscure language, but it is claimed to be an agreement that the claims shall be retained by the indemnified, the company relinquishing the title thereto on condition that a certain limit of loss, different from that previously stated in the policy, shall be borne by the indemnified. The manner by which this limit is to be calculated is scarcely to be understood from the words, "such sum of gross loss shall be the limit to be borne by the indemnified as, less 25 per cent., will equal the agreed amount of annual net loss," and, prima facie, the language is not intelligible. The only aid given to its construction is to be found in the "agreed statement of facts" in the record, where it is stated, "It is agreed that, mathematically considered, $5,000 is the 'sum of gross loss' mentioned in condition 12a 'as less 25 per cent. will equal the agreed amount of annual net loss.'" If we substitute in condition 12a as here indicated, it will read, "It is agreed that $5,000 shall be the limit to be borne by the indemnified as, less 25 per cent., will equal the agreed amount of annual net loss; all claims making up such said $5,000 to remain the property of the indemnified." This substitution does not clear the condition of ambiguity. In the condition, the words "sum of gross loss" seem to be used first in the sense of limit to be borne by the indemnified, and, secondly, in the sense of total loss. We are unable to determine whether the condition was intended to give salvage to the plaintiff on all claims, or only on a part of them. We cannot assume that, in consideration of having salvage in claims amounting only to $5,000, the indemnified intended to increase his initial loss to that sum, as the supplemented condition would indicate, nor, on the other hand, can we say that the sum of total loss is agreed to be $5,000; for the determination of total loss is in issue on this appeal. We therefore hold that the condition is not sufficiently certain to be applied, and should be disregarded. The company, being charged with the duty, should make

the conditions reasonably certain and clear, and it would be unjust and inequitable to permit it to receive the most favorable construction of a blind and obscure condition.

This view is clearly expressed in the case of Indemnity Co. v. Wood, 19 C. C. A. 264, 73 Fed., at page 88, where the learned judge, referring to this condition 12a, says:

"If, by the introduction of a subsequent and obscure clause, difficult to understand, or requiring expert knowledge for its comprehension, the preceding clauses, plainly and unequivocally expressed, by which the initial loss of the indemnified is fixed, are nullified, the subsequent clause must be ignored. It cannot be permitted to operate as a snare to the unwary."

In the present case there was a clear understanding of an initial liability of $3,750; and the condition 12a is not clear, even with the substitution of "$5,000" for the words "sum of gross loss." There remains an uncertainty as to the real intent and meaning of the condition, and it cannot, therefore, be permitted to operate to change the clearly stated initial loss to the injury of the indemnified. If, in fact, we adopt the defendant's interpretation of this condition, it only grants the indemnified an option to increase his initial liability. But no facts are made to appear which show that the plaintiff chose to exercise such an option, and therefore the defendant has no ground for contending that the condition should be taken into consideration. The referee was, therefore, right in following the terms of condition 12b in disposing of payments made by creditors subsequent to their failure, and after the expiration of the policy.

It follows from the construction thus given to the several conditions of the policy that the judgment confirming the referee's report should be modified by striking out the claim of Lally & Collins, amounting to $995.38, leaving $900.61, with interest from October 1, 1894, and costs in the court below, due from the defendant. As so modified, the judgment should be affirmed, without costs of this appeal. All concur, except INGRAHAM and McLAUGHLIN, JJ., dissenting.

INGRAHAM, J. (dissenting). I concur with Mr. Justice O'BRIEN as to the disposition made of the claim against the defendant on account of the loss by the failure of Lally & Collins, but I do not agree that the clause 12a, annexed to the policy, is so uncertain as to its real intent that it cannot operate as a term of the policy. By the policy the defendant agreed to indemnify the plaintiff against loss "to the extent of, and not exceeding, fifteen thousand dollars, resulting from insolvency of debtors over and above a net loss of $3,750 (thirty-seven hundred fifty dollars), first to be borne by the said indemnified." By clause 12a, which, by the terms of the policy itself, was made a part of the contract as fully as if it were recited at length therein, it is provided:

"To simplify adjustment, and to avoid disputes, it is agreed that such sum of gross loss shall be the limit to be borne by the indemnified, as less 25 per cent. will equal the agreed amount of annual net loss."

It is admitted in the agreed statement of facts that the sum of $5,000, less 25 per cent., will equal the agreed amount of annual net

loss, viz. $3,750.   In order to provide a method by which such net loss could be ascertained, it was agreed that a gross loss of $5,000 would produce a net loss of $3,750; or, in other words, that by the agreement in the case of debtors owing $5,000 an amount should be fixed which would result in a net loss to the creditor of $3,750, and there should, therefore, be no claim against the defendant until there was a gross loss of $5,000, it being assumed that, where debtors of the insured failed owing $5,000, the insured would receive as dividends or part payment of such $5,000 in debts 25 per cent., and that to insure the insured obtaining that sum of 25 per cent. it was agreed that the claim going to make up this sum of $5,000 should not pass to the defendant, but should remain the property of the insured, who would be entitled to receive any dividend or payments made thereon.   I fail to see where there is any difficulty in construing this condition annexed to the policy.   Where a loss is incurred in consequence of the failure of a debtor, the gross loss would be the amount owing by the debtor at the time of the failure.   The net loss would be the amount that the creditor would lose after all dividends upon the debtor's estate, or all partial payments that would be received by the creditor on account of the indebtedness after the failure.   It was the net loss of $3,750 that the assured was to sustain before there was a liability under the policy, and, in order to ascertain what that net loss should be, the parties agreed that it was to be considered that the gross loss, or the amount that the debtor owed when he failed, would be reduced by 25 per cent. by dividends received from the debtor's estate.   The parties have made their contract, which seems to me to be reasonably clear and capable of enforcement, and I can see no reason why it should not be enforced.   I think, therefore, that the defendant was liable only where the loss sustained by the plaintiff by the failure of his debtors exceeded the gross sum of $5,000, and, as there is no evidence that such a gross sum was exceeded, the defendant was entitled to judgment.   For that reason I think the judgment should be reversed.

McLAUGHLIN, J., concurs.