(28 App. Div. 75.)

### TALCOTT v. NATIONAL CREDIT INS. CO.

(Supreme Court, Appellate Division, First Department. April 7, 1898.)

1. CREDIT INSURANCE—ADJUSTMENT OF CLAIM—CONSTRUCTION OF POLICY.
   A provision in a policy of insurance against losses from insolvency of those to whom the insured should sell goods to a certain amount required that "all statements accepted, amounts paid, secured, or guarantied, or in process of collection, on any claim, at the time of final proof of loss, shall first be deducted and prorated on shipments made under this bond." *Held,* that this does not require prorating where the entire debt was for goods shipped during the term covered by the policy.

2. SAME.
   One insured against losses from insolvency of his debtors may deduct his commission for selling goods in his hands belonging to the debtor before applying the proceeds on the debt.

3. SAME—PREMATURITY OF SUIT—INTEREST.
   Where a policy of insurance against losses by insolvency of debtors provides that a claim under it may be adjusted before the creditor realizes on all securities, the mere fact that a matured debt is secured does not render an action on the policy premature, and therefore interest which accrues on the debt subsequent to suit cannot be charged.

Appeal from trial term.

Action by James Talcott against the National Credit Insurance Company. From a judgment for plaintiff, defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Rufus W. Peckham, Jr., for appellant.
Frederic R. Kellogg, for respondent.

BARRETT, J.    The action is brought upon a policy in the sum of $5,000, insuring the plaintiff against loss from the insolvency of those to whom he should sell goods (between March 11, 1892, and March 11, 1893) in excess of five-eighths of 1 per cent. of the amount of his total sales during this period.    A rider annexed to the policy provides: "Advances made on goods, for transacting above-named business [that of dress goods commission merchant], to be protected and covered under the terms and conditions of this bond."    There are 16 clauses in the policy, setting forth the terms and conditions upon which the defendant's liability depends.    The sixth clause limits all claims of loss for debts due the plaintiff by any one individual or firm to the sum of $10,000.    The plaintiff has recovered judgment for the full amount of the policy, with interest.    His claim is based upon a single transaction, that with Albert Crenshaw & Co., of Philadelphia.    Crenshaw & Co. failed about October 26, 1892.    At this date they owed the plaintiff nearly $34,000, against which he held a large quantity of dress goods, consigned to him for sale.    These goods were sold from time to time thereafter, and the net proceeds credited upon the account.    They were not all disposed of until about January 1, 1897.    After adding to the amount of the advances the expenses of sale, including commissions, and deducting the amount realized from the goods and the other sums specified in the policy, there remained a balance of over $5,000.    The defendant's principal contention is that this method of computation was erroneous.    It is said that the amount realized from the consigned goods after Crenshaw & Co.'s insolvency should have been apportioned ratably between the $10,000 of debt which the policy covered and the $24,000 which it did not cover.    Such a payment would have been more than sufficient to extinguish the $10,000 of insured debt.

If this contention is to prevail, it must, we think, find direct support in the provisions of the policy.    The general nature of the insurance does not sanction it.    The indemnity is against "losses"; and, as we said upon a previous occasion in construing such a policy, "Money is not 'lost' which the creditor is able to obtain, whether the payment be made before or after the commission of the act of insolvency." Goodman v. Guarantee Co., 17 App. Div. 474, 45 N. Y. Supp. 508.    The provision which the defendant relies upon in support of its contention is contained in the tenth clause of the policy, which reads: "All settlements accepted, amounts paid, secured, or guarantied, or in process of collection, on any claim, at the time of final proof of loss, shall first be deducted and prorated on shipments made under this bond, before condition number eighth shall apply."    Stress is laid upon the word "prorated," which, it is said, indicates an apportionment of payments.    That is true; but the nature of that apportionment is disclosed by the context.    Payments are to be "prorated on shipments made under this bond."    That is, when a debt is made up of the purchase price of goods, some of which were sold within the period of the policy, and some of which were not, a payment upon the debt must be apportioned so that the part insured shall receive its due share.    The clause, as a whole, can mean nothing else.    We have no such case here.    All the advances were made during the period of the policy; and the only rea-

son why the whole debt is not covered is that the policy limits claims of loss for debts due by any one firm or individual to $10,000. There is not a word in the tenth clause permitting the inference that payments are to be apportioned between this $10,000 and the balance of the debt. The provision is general that payments are to be "deducted," which, of course, means subtracted in the ordinary manner. To this is added a provision for apportionment as between shipments made under the bond and shipments not so made. To this extent the first provision is qualified, and no further.

There is another reason why the defendant's contention must fail. The tenth clause provides for the deduction of payments "before condition number eighth shall apply." The eighth clause provides for two other deductions, viz. 15 per cent. of the amount of the claim, and five-eighths of 1 per cent. of the amount of the annual sales. Thus, after subtracting all payments, there are still other deductions to be made before the claim is in a condition to be included in the proofs of loss. But, in order to apportion payments between the $10,000 of insured debt and the uninsured surplus, it is necessary to know the exact excess of the claim, after all deductions are made, beyond the sum of $10,000. Thus, if we are to adopt the defendant's construction, the tenth clause directs an apportionment to be made at a time when it is impossible to make it.

We thus conclude that, under this policy, sums realized after insolvency should simply be deducted in full, and not apportioned between the insured and uninsured part of a debt contracted wholly during the period of the policy. We came to just the opposite conclusion in the Goodman Case, supra, with reference to the policy then under consideration. This was due to a specific clause in that policy providing that, "when only a part of a loss is covered by this contract, the proportionate part of everything realized or secured by the indemnified shall be credited to so much of the loss as is covered by this contract." There is no such provision here, or any fair equivalent; and the two policies are quite dissimilar, so far as concerns the point we have been considering.

The defendant also contends that the plaintiff improperly deducted from the proceeds of the goods his commission for selling them. It is said that he was insured only for "advances" made, and that this commission was for services rendered. The argument is based upon a misapprehension. The plaintiff's claim is founded upon advances made to Crenshaw & Co., which are directly covered by the policy. From the total amount of this debt, the sum realized from the consigned goods must be deducted. The only question is whether the gross or the net proceeds should be subtracted. We think that, without doubt, the latter is the proper credit. The sum which Crenshaw & Co. owed the plaintiff is the measure of the defendant's liability; and there can be no doubt that, as between Crenshaw & Co. and the plaintiff, the latter is entitled to his commissions. In allowing them to be deducted from the gross proceeds of sale, we are not permitting the plaintiff to recover upon a cause of action for services. We are merely ascertaining the precise amount of the debt due by Crenshaw & Co. for the advances made to them. In ascertaining that precise

amount, commissions are just as much to be deducted as freight, cartage, or any of the other expenses of sale.    The defendant might, with just as great reason, argue that the policy does not cover these latter claims.

We think, however, that it was error to include in the claim interest upon the advances which accrued subsequent to July 27, 1893, the date when the action was begun.    The suit was not premature.    The plaintiff was not bound to wait until all the consigned goods were sold.    The policy plainly contemplates the inclusion in the proofs of loss of claims which are not yet liquidated.    It provides that all amounts "secured or guarantied," as well as those actually paid, shall be included in the proofs.    It also provides for the deduction of sums paid, secured, etc., "or in process of collection."    Adjustment is to be made within 60 days after the presentation of proofs of loss, and payment within 60 days after adjustment.    Thus, the defendant might have to adjust and pay a claim not wholly liquidated, or stand suit upon it.    It had to decide, upon the facts placed before it, what was in fact the amount "secured"; that is, what the security would bring. If it could not come to an agreement with the insured as to this, it was either bound to pay and obtain subrogation, or take the chances of a suit.

Thus the plaintiff's cause of action was complete on July 27, 1893. He may recover what the defendant owed him on that date, with interest.    But the defendant owed only what Crenshaw & Co. owed on that date, and manifestly the latter were not liable for interest which had not yet accrued.    It is true that it was the plaintiff's duty to proceed with the sale of the goods.    But this did not, as we have seen, prevent his cause of action from accruing.    He could and did bring suit long before all the goods were sold, and he secured a trial just as speedily as though no such subsequent sales had been necessary. It is true, also, that the result of this further action was relevant in arriving at a determination of what was due when the suit was brought.    It was evidence, and, as it existed at the time of trial, perhaps controlling evidence, of the extent to which the debt was secured. What it was admitted to prove, however, was not the amount due at the period when the last of the goods were sold, but the amount due when the suit was brought.    It is impossible, in this view, to permit the plaintiff to recover interest upon the advances during the period of liquidation.    That would be to compensate him, by that allowance, for the time spent in ascertaining, in a particular way, the precise amount of the debt when suit was brought.    Such an allowance of interest would only be possible or permissible in case the sale of the goods had been a condition precedent to the enforcement of the plaintiff's rights, and, if that were so, the action was premature.    As we have seen, however, the sale of the goods was not such a condition precedent. The cause of action was complete when the suit was commenced, and consequently the plaintiff can only recover what was then due, without regard to the time spent, or the practical method adopted, in the process of ascertainment.    To permit him to recover this running interest would be to permit a recovery upon a default which had not occurred when the suit was brought.    After July 27, 1893, the only default

for which the plaintiff could recover was the defendant's default in not paying what was due on that day. This default is represented by the interest on the verdict, and that is all to which the plaintiff is entitled.

It follows that interest accruing on the advance subsequently to July 27, 1893, should have been excluded from the claim, and the judgment must be modified accordingly. Upon the settlement of the order we will determine whether, upon the facts appearing in the record, the modification can properly be made. If not, the judgment must be reversed, and a new trial ordered. All concur.