(55 App. Div. 594.)

## PEOPLE v. MERCANTILE CREDIT GUARANTEE CO.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

1. INSURANCE—CREDIT POLICY—INSOLVENCY—ASSIGNMENTS FOR CREDITORS.

   Where a portion of a credit policy provided that an initial loss, to be determined by the amount of sales made by insured, should be borne by the insured before there should be a liability on the part of the insurer, and another portion provided that, if unsettled claims were retained by the insured instead of being assigned to the insurer, the insurer should pay 80 per cent. thereof, in determining the insurer's liability it was proper to deduct 20 per cent. of unsettled claims from the gross loss after the initial loss had been deducted, on the ground that, the initial loss having been clearly stated in the policy, the provision as to unsettled claims should not be allowed to increase such loss, since the two provisions referred to separate objects.

2. SAME—ASSIGNMENTS.

   Where a credit policy provided that the insurer should only be liable for loss sustained by the insolvency of debtors, and defined insolvency as existing when an execution should have been returned unsatisfied, and goods were sold by insured during the life of the policy, but an execution against the buyer was not returned unsatisfied until three days after the expiration of the policy, the insurer was not liable for the loss.

3. SAME.

   A credit policy provided that an insolvent debtor whose debts to the insured the insurer would be liable for should be one who had made a

general assignment for creditors. *Held*, that such provision should be construed as not including any disposition of the debtor's assets rendering the collecting of insured's claim impossible, but only an assignment of all the debtor's property for distribution among his creditors; and hence assignments by debtors of particular property for the benefit of particular persons were not within the policy.

Van Brunt, P. J., and Hatch, J., dissenting.

Appeal from special term, New York county.

Action by the people of the state of New York against the Mercantile Credit Guarantee Company. From an order confirming the report of a referee appointed to hear claims against defendant, the Winsted Hosiery Company and another appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Raphael J. Moses, for appellants.

Courtland V. Anable, for respondent.

O'BRIEN, J. The Winsted Hosiery Company and the Daniel Forbes Company, by virtue of policies of credit insurance, made claims against the Mercantile Credit Guarantee Company, which had issued the policies, and which had been placed in the hands of a receiver. These claims were contested by the receiver, and the issues were sent to a referee, who granted a part of the claim of the hosiery company, and disallowed entirely the claim of the Forbes Company. To his report exceptions were filed, and it is from the order confirming the report and overruling the exceptions that this appeal is taken by the companies making the claims.

Both claimants filed exceptions to the conclusion reached by the referee as to the method of ascertaining the loss which was to be deducted, under the terms of the policy, from the total loss, for the purpose of determining the net amount which the credit company should pay. We find in the record, bearing upon the claim of the Winsted Hosiery Company, the following: "It is agreed that the initial loss to be borne by the insured, under the terms of the policy, is $1,318.19. * * *" This is the amount which was deducted by the referee from the total loss, and we do not quite understand why the hosiery company excepted to the finding based on this stipulation. We may assume, however, as the question is one which is also presented by the Forbes Company, that the object sought is to review the rule applied by the learned referee in fixing the loss to be borne by the insured, for the reason that nowhere in the record have we the account of the total gross sales nor a list of the entire indebtedness due the two claimants, and therefore have not before us the necessary facts upon which to compute the exact amount of the initial loss or the total of unsettled claims. We take it that there was no dispute about the total gross sales, and that the mathematical calculation made by the referee was right, provided the correct method was adopted.

The initial loss, as stipulated in the policies, was that amount, based upon a percentage of the total gross sales, which the credit company was entitled to deduct from the gross loss in order to ascer-

tain the net loss for which payment was to be made. What the referee did in determining the amount the credit company was to pay was to deduct the initial loss so found, and, in addition thereto, 20 per cent. of the debts, which, as against the customers of the respective companies, were unsettled, and which the claimants retained. It is insisted that the referee could not thus deduct both the initial loss based upon the sales, and also 20 per cent. of the unsettled debts. We think, however, that the course which he followed was right, and, without setting forth the provisions of the policies at length, the reasons for our conclusion may be briefly stated.

The conditions relating to initial loss and those referring to unsettled claims were in distinct and separate parts of the policies, and these provisions, being thus disjunctive, and not conjunctive, should be separately considered and separately applied. They do not come within the application of the principle in the cases cited by the appellants, that, where a policy contains a clear statement of the initial loss to be borne by the insured, no ambiguous clause increasing this amount shall be of force, for the reason that they refer to entirely separate objects. When so regarded and treated, we think it is evident that the conclusion reached by the referee as to the amount for which the credit company here was liable was right.

To ascertain the net loss for which payment is to be made, we find that there is to be first deducted from the total loss a certain sum, or initial loss. Having deducted this, we have an amount which includes unsettled claims of the insured. To determine, however, whether the right to collect the unsettled claims, which made up the total loss, should remain with the insured, or should belong to the insurers, we find the distinct provision in the policies that the credit company may allow to the insured such unsettled claims at their full or face value, and take an assignment of them, or else may allow the insured to retain all rights in these claims, in which latter event there shall be deducted 20 per cent. of the amount thereof from what the credit company would otherwise pay. In other words, if the credit company allowed the insured to retain the claims and collect them, then it was to be given a 20 per cent. deduction of their face value; but if, on the other hand, the credit company wished to undertake the collection of them on its own account, the full amount thereof was to be allowed to the insured in calculating the final net loss for which payment was to be made. Here the insured retained the right to collect the debts, and 20 per cent. thereof was consequently deducted, separate and apart from the stipulated initial loss.

Although the two policies are not exactly alike in language, their intent and purpose is the same, and we have considered them as though they were identical, for the reason that no point is made of the fact that there is some slight difference in phraseology; and our conclusion is that the exceptions taken to the method adopted by the referee in ascertaining the net loss to be paid by the credit company cannot be sustained.

The only other issue raised by the Forbes Company is as to the disallowance by the referee of the item of $441.97 due to it by the Crescent Leather Supply Company. This indebtedness, it appears,

arose during the term of the policy, and a judgment was obtained
by the Forbes Company, and an execution issued, which execution,
however, was not returned until May 3, 1897; the policy in the
meantime having expired on April 30, 1897. Had the execution
been returned unsatisfied three days sooner, no question as to the ad-
mission of the claim would be presented, and much stress is placed
upon this fact; the argument being that such a loss was within the
intent and meaning of the policy, even though beyond the pale of its
express language. We do not think, however, that we are at any
more liberty to disregard the three days which had elapsed than we
would be to disregard three years, in a case such as this, where the
language of the policy, which must control, is reasonably free from
doubt. Talcott v. Insurance Co., 9 App. Div. 433, 41 N. Y. Supp.
281. And, in considering this subject, it should be remembered that
the losses which the credit company herein agreed to pay were claims
due from insolvent debtors; and, as insolvency is a broad term, the
parties, having that fact in mind, expressly stipulated who should be
deemed insolvent debtors, within the meaning of the policy.

What the policies insured against was "loss sustained by the
insolvency of debtors," and in the Forbes policy, under the heading
of "What the Policy Covers," it is provided:

"Only such amounts as are actually (due) by an insolvent debtor to the
insured at the date of his insolvency shall be taken into the calculation of
losses under this policy, and only when—First, the said debtor has made a
general assignment for the benefit of his creditors, or has been declared insol-
vent in legal or judicial proceedings, or an execution has been returned unsat-
isfied on a judgment obtained against him by the insured or some other
creditor for merchandise sold to said debtor during the period covered by the
policy, provided the said execution has not been returned after the appoint-
ment of a receiver or trustee of the property of the debtor."

The Winsted policy, also, contains the similar provision:

"The term, 'loss sustained by the insolvency of debtors,' is agreed to mean
losses upon sales made by the insured to debtors who have made a general
assignment for the benefit of their creditors, or who have been declared insol-
vent in legal or judicial proceedings, or whose business has been sold by the
sheriff, marshal, or other public officer, under an attachment, execution, or
other process, or against whom an execution has been returned unsatisfied
upon a judgment obtained by the insured or some other creditor for sales of
merchandise made during the period covered by this policy."

Contrary to the provision and the definition in the policy, we would
not be justified in enlarging the class of persons who were to be in-
cluded as insolvent debtors. Not only have we the status of those
whose debts are to be insured against defined, but we have, through-
out the policy, language which negatives any other construction than
that such status is to be determined during the period covered by it.
Where, therefore, a debtor does not, during the life of the policy,
become an "insolvent" debtor, as thus defined, it can make no differ-
ence, as to the rights of the parties, whether the change in such
status occurs, as we have said, three days, or three months, or three
years, after the policy has expired.

It is urged, however, by the appellants that the decision in Talcott
v. Insurance Co., supra, is not applicable in the present instance,

but that the case of Sloman v. Guarantee Co., 112 Mich. 258, 70 N. W. 886, which contained a provision as to filing proof of loss which is similar to such a provision in this policy, should be followed. It was held in the Michigan case, as to the clause of the policy limiting the period which it was to cover, that "it is not necessary to infer from that provision that losses occurring after the 31st of March are not recoverable at all.   *   *   *   It is just as consistent to say (so far as this provision is concerned) that the loss occurring thereafter is limited to cases where proof is filed within ninety days as to say that they are excluded altogether." Such a construction we do not think can be given the conditions imposed by the policies before us.   Here the requirement as to filing claims is that "the insured must present to the company at its office in New York, on one of the blank forms furnished by the company, within sixty days after the expiration of this policy, verified proofs in writing giving in detail the losses sustained by the insured, a statement of the gross sales and shipments made during the term of this policy, and such other information as may be required by the company." We think it is clear that the proofs which must thus be offered are of losses defined by the policy and sustained prior to its expiration. We think, therefore, that the referee was right in disallowing the debt due by the Crescent Leather-Supply Company.

A similar process of reasoning, we think, will dispose of the question of the disallowance of the items presented on this appeal by the Winsted Hosiery Company, which are three in number, as follows: Alexander S. Getz, $101.70; W. Moses & Son, $176.14; Robie & Co., $86.40. In each of these cases it was urged before the referee that the debtors were insolvent, within the meaning of the policy, for the reason that what they did was equivalent to making general assignments; and the question presented as to each item was whether the paper introduced in evidence, purporting to dispose of property by these persons, constituted a general assignment. The instrument, relating to the first-mentioned item, reads:

"(1) Alexander S. Getz, * * * being indebted to various parties hereinafter named, * * * in consideration of * * * cash in hand paid by Joseph R. Friend, * * * have this day transferred * * * all my stock * * * now in my store * * * 218 Main street, * * * together with all the counters * * * and other fixtures therein; * * * and said Joseph R. Friend, trustee, shall proceed * * * to sell the property hereby conveyed, or so much thereof as may be necessary, to pay, in the order named, the following indebtedness, * * *· and the balance, if any, of said property, or the proceeds thereof, shall be returned to me."

The second paper recites that Henry Moses, doing business under the firm name and style of W. Moses & Son, has, "in consideration of the debts and trust hereinafter mentioned and cash in hand paid," granted, sold, and conveyed to Joseph Koen certain specified property, "to have and to hold the above-described property, together with all and singular the rights and appurtenances thereto.   *   *   * And I do hereby warrant and defend all and singular the said property   *   *   *   against every person.   *   *   *   In trust, however, for the following purposes," namely, for the purpose of securing the payment of certain specified debts in the order named, and, when a

sufficient quantity of stock is sold to pay said debts, then what is left shall be returned. "This conveyance * * * is intended as a mortgage to secure the payment of said claim." The third alleged general assignment is a chattel mortgage pure and simple, and makes no mention of any creditors. None of these instruments, we think, forms a proper basis for concluding that there was shown, as to the several debtors, a loss sustained under conditions which the policy was intended to cover. We have already quoted the clause of the policy defining what was meant by "loss sustained by the insolvency of debtors," and shown that we may not enlarge its scope. Moreover, a similar, and almost identical, clause of a credit insurance policy has been considered by this court in the case of Goodman v. Guarantee Co., 17 App. Div. 474, 45 N. Y. Supp. 508, and that decision we should regard as controlling. Therein a similar question was presented as to whether a certain instrument whereby specified goods were conveyed in trust, with direction to sell the same, and devote the proceeds to the payment of specified creditors, constituted a general assignment under the policy. There, also, as shown in the opinion, the contention was made that "by 'general assignment' in the policy is meant any such disposition by a debtor of his property as induces insolvency in the ordinary meaning of the term,—as renders it impossible for the plaintiffs to realize their claim." And it was said by the court:

"This seems to us to be reasoning in a circle. The policy provides for indemnity against losses by 'insolvency,' and then undertakes to define of what insolvency shall consist. This definition is binding upon the parties, and no loss which does not comply with it can be proved against the defendant. But the execution of a 'general assignment' is employed as a test of 'insolvency.' Consequently, to say that such an assignment as produces insolvency is meant is either to say nothing at all, or to abrogate the contract definition entirely, and adopt one from some outside source, which may or may not be like that provided for. 'Assignment' cannot be defined in terms of 'insolvency' at the same time that 'insolvency' is defined in terms of 'assignment.' Discarding such a definition, we see no reason why the term, 'general assignment for the benefit of creditors,' should not be given its ordinary legal significance. * * * It is contended that it is not necessary that an assignment, in order to be general, must cover absolutely all the debtor's property, and that, if substantially all is transferred, the assignment is general. Such a doctrine has obtained elsewhere (Mussey v. Noyes, 26 Vt. 462), but not in this state."

We do not intend to hold, nor do we think that the case cited holds, that there must be technical compliance within our statutes relating to general assignments for the benefit of creditors in order to constitute "insolvency," within the meaning of that term as used in the policy. The question then before the court did not involve this necessity, as the instrument there under consideration did not assign the whole of the debtor's property for the benefit of creditors, and therefore it could not constitute a general assignment for the benefit of creditors, in any view. Then, after showing that there was no conclusive evidence that the maker of the instrument in question had no tangible property after its execution, the court continued: "We hold that the instruments executed * * * do not on their face comply with the policy definition of a general assignment, and

that the plaintiffs failed to show that they in fact brought him within the proper category." We shall be inclined to hold that any instrument which conveys to a trustee for the benefit of creditors all of the debtor's property, without reservation, for distribution among them, would constitute, within the meaning of this policy, a general assignment for the benefit of creditors. Applying this reasoning to the facts here, we do not think that the instruments presented show that a "general assignment," as intended by the policy and as defined by the laws of this state, was made.

As urged by the respondent, a "general assignment," in its ordinary legal significance, means "an assignment by a debtor transferring all his property, in general terms, to an assignee in trust for all his creditors." Wheel Co. v. Fielding, 101 N. Y. 504, 5 N. E. 431; Tiemeyer v. Turnquist, 85 N. Y. 516; Brown v. Guthrie, 110 N. Y. 435, 18 N. E. 254; Knapp v. McGowan, 96 N. Y. 75. It will be seen that the third instrument fails in each of these essentials, and that the other two designate particular property and particular creditors.

Our conclusion, therefore, is that the order confirming the report of the referee, and overruling the exceptions taken thereto, should, in all respects, be affirmed, with costs.

PATTERSON and INGRAHAM, JJ., concur.

HATCH, J. The opinion of Mr. Justice O'BRIEN is in accord with my views of this case, except so far as it relates to the claim of the Forbes Company against the Crescent Leather Mills Supply Company. It seems to me that the whole purport and intent of the contract issued by the defendant was to insure the Forbes Company for any loss which it might sustain by reason of merchandise sold, or for which it became responsible, during the life of the policy, and which should be proved by filing proofs of loss at any time within 60 days after the expiration of the policy. The contract in express terms insures against loss sustained by reason of the insolvency of debtors owing the insured for merchandise, or for which it might be liable under its guaranty of sales made of goods of other parties, made between the 1st day of May, 1896, and the 30th day of April, 1897, both dates inclusive. Under such contract, liability ensues for the loss if the goods be sold, and insolvency follows during the period covered by the policy.

Unless, therefore, the contract be in these respects qualified by subsequent conditions, liability for this claim would seem to exist, as the conditions upon which to found the same would be complete. It is the claim of the defendant that its liability is so qualified and limited by the clause which defines the conditions under which the loss must be sustained. The clause reads as follows:

"Insolvency shall be taken into the calculation of losses under this policy only when—First, the said debtor has made a general assignment for the benefit of his creditors, or has been declared insolvent in legal or judicial proceedings, or an execution has been returned unsatisfied on a judgment obtained against him by the insured or some other creditor for merchandise sold to said debtor during the period covered by this policy, provided the said execu-

tion has not been returned after the appointment of a receiver or trustee of the property of the debtor."

It is not contended but that the facts bring this claim within these conditions, save only that the execution was returned three days after the expiration of the policy. Such qualification, however, is not expressed, in terms, by any language which is used in the policy. The only condition relating to the execution is that it shall have "been returned unsatisfied on a judgment obtained * * * for merchandise sold to said debtor during the period covered by this policy," and that it "has not been returned after appointment of a receiver or trustee of the property of the debtor." There is no express provision in this language as to the time when the execution shall be returned. All requirements are answered when a judgment has been obtained for merchandise sold during the period covered by the policy, and an execution has been returned on it before the appointment of a receiver or trustee.

It seems clear, to my mind, that the intent and meaning of the policy was to insure for loss sustained upon goods sold during the period covered by the policy, of which the defendant should receive notice within 60 days after its expiration. This position cannot be overthrown except by raising out of the contract an implication that all of the things must have co-existed upon the date when it terminated. This, clearly, would not be so if the proviso at the end of the quoted clause be omitted, and, as such proviso does not relate to any subject presented by the case, it cannot be made applicable. Nor is there any authority for adding anything to it, much less for holding that, by implication, should be raised, or otherwise incorporated into it, a provision that the execution must be returned before the expiration of the policy. The words, "during the period covered by this policy," relate to the time of the sale of the merchandise. This would clearly be the construction if a comma had been inserted after the word "unsatisfied." Reading the whole together, and construing it in connection with the first clause of the policy, and bearing in mind that the intent was to insure for losses upon merchandise sold, it would seem reasonable to so construe these words as relating to the time of the sale, and not to the return of the execution. In any event, it would seem that the language used is susceptible of such construction, and, if so susceptible, then it is to be so construed; for we are bound to construe it most strongly against the insurer, as it formulated the provision. The most which I think can be claimed for the defendant is that the clause is ambiguous. But this does not relieve it from liability; for, in such event, the ambiguity is also to be resolved in favor of the insured. Goodman v. Credit Co., 17 App. Div. 474, 45 N. Y. Supp. 508. It was thought by the learned referee that the clause in question construed itself. The argument, however, which both preceded and followed this statement, furnishes a striking illustration of the existence of a necessity for refinement in reaching such conclusion, and this result furnishes strong grounds for asserting that there exists, at least, a palpable ambiguity. This argument finds further support in the fact that the policy defines when the insurer shall receive notice of loss, and when

proofs of loss must be served; in the one case 10, and in the other 60, days. It is quite as reasonable to say that these provisions relate to losses which accrue upon sales of merchandise during the period covered by the policy of which the evidence does not exist upon the date of its expiration to charge liability, but does exist before the expiration of the time within which notice can be given, as to say that the whole evidence must be complete when the policy expired. In either case the loss is the same, and was fully in existence before the policy expired. Sloman v. Guarantee Co., 112 Mich. 258, 70 N. W. 886.

For these reasons, I think the defendant should be charged with the amount of this claim. I should also have been disposed to hold that the instrument executed by Goetz constituted a general assignment for the benefit of creditors, within the meaning of this policy, and that the Winsted Hosiery Company was entitled to an allowance of its claim against him. I do not think that the decision in Goodman v. Guarantee Co., 17 App. Div. 474, 45 N. Y. Supp. 508, held, or that it was intended therein to hold, that a general assignment must be in technical compliance with our statutes relating to assignments for the benefit of creditors, in order to bring it within the terms of the policy. In that case it appeared that the assignment there under consideration did not purport to assign the whole of the debtor's property for the benefit of creditors. On the contrary, it appeared that the whole of the debtor's property was not assigned, and the discussion (page 478, 17 App. Div., and page 511, 45 N. Y. Supp.) seems to indicate that an instrument which assigns all of the debtor's property for the benefit of a part of his creditors in amount equal to or exceeding the value of the property assigned, without any reservation, would constitute a general assignment, within the meaning of this policy. Such an instrument would seem to possess all of the characteristics of a general assignment for the benefit of creditors. Brown v. Guthrie, 110 N. Y. 435, 18 N. E. 254. The only limitation exists in the fact that such assignment would not be for the benefit of all the creditors, but only certain specified creditors. If, however, it assign all the debtor's property to a trustee, without reservation, for the payment of debts equivalent in amount to the value of the property, all the elements of a general assignment exist, and "insolvency" would, I think, appear, within the fair meaning of the term as used in the policy. But the difficulty in applying this rule to the Goetz assignment is the fact that it nowhere appears that the property assigned did not exceed in value the debts of the creditors which the trustee was directed to pay, and, from all that appears, it may well be that the property exceeded in value the amount of such debts. Indeed, it is a fair assumption that such was the case, and that the assignor knew it so to be when the assignment was executed, from the fact that the trustee is required, by the terms of the instrument, to pay any surplus that shall remain after the execution of the trust to the assignor. The assignment was therefore in no sense general, and it was void as to those creditors for whose claims no provision was made. Knapp v. McGowan, 96 N. Y. 75.

I am therefore in favor of modifying this judgment by allowing the claim of the Forbes Company against the Crescent Leather Mills Supply Company, and of affirming the judgment as so modified.

VAN BRUNT, P. J., concurs.