(61 App. Div. 364.)

· YOUNG et al. v. STONE, Sheriff.

(Supreme Court, Appellate Division, Third Department. May 8, 1901.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—BILL OF SALE—VALIDITY.

A written instrument from a debtor to a creditor, purporting to be a bill of sale of all the debtor's property, which is worth much more than the creditor's claims, and which states that the property is sold in consideration of the indebtedness due the creditor and to secure other creditors, is not a bill of sale, either absolute or as collateral security, but an attempted assignment for the benefit of creditors, which is invalid in failing to comply with the general assignment law, and the property may be attached by other creditors.

Appeal from trial term, Broome county.

Action by John R. Young and another against Winfield S. Stone, as sheriff of Broome county, for the conversion of goods alleged to have been wrongfully levied on by defendant. From a judgment in favor of the defendant, and from an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

Prior to the commencement of this action, plaintiffs were co-partners doing business under the firm name of Young & Newman, as tobacco merchants, in the city of Philadelphia, Pa., and in the year 1889 the firm of Scott & Clark were cigar manufacturers in the city of Binghamton, N. Y. The plaintiffs sold Scott & Clark leaf tobacco, and in December, 1889, Scott & Clark were indebted to them on account thereof in the sum of $1,226.24, for which Scott & Clark had given them six promissory notes. On the 19th day of December, 1889, one of said notes, amounting to $214.18, having been protested for nonpayment, Mr. Newman, one of the plaintiffs, went to the city of Binghamton to look after the interest of the plaintiffs with reference to their claim. The firm of Scott & Clark were at that time indebted to a large number of persons, and they could not meet their liabilities. On the morning of the 20th day of December, the plaintiffs procured an attachment to be issued in an action against Scott & Clark founded upon the note, which had matured. The affidavits on which the attachment was issued were made by Mr. Newman, and Mr. Hanlon, the plaintiffs' selling agent. In Mr. Newman's affidavit he says "that the said defendants are about to dispose of their property with intent to defraud their creditors," and he further says that his information was obtained from Mr. Hanlon. In Mr. Hanlon's affidavit he details the information received by him, including the following: "That defendants would execute a bill of sale to a certain party in this city on the 20th day of December of their entire stock of goods, and all of their effects and property, and this party to whom the bill of sale was to be given would then try to compromise with the creditors; otherwise, they would not get anything." He further states in his affidavit "that numerous creditors have been pressing the defendants for the payment of their claims within the past four days, and defendants have stated to deponent that they had a large number of debts outstanding and could not meet their liabilities." On the morning of December 20th, Mr. Newman, together with his attorney and a deputy sheriff of the county with the warrant of attachment in his possession, went to the place of business of Scott & Clark, and very soon thereafter an instrument was executed by one of the partners, and delivered to the plaintiffs, of which the following is a copy:

"Binghamton, N. Y., December 20th, 1889.

"Know all men by these presents, that I, Lyman Clark, one of the firm of Scott & Clark, of the city of Binghamton, N. Y., do hereby bargain, sell, and transfer and set over, and by these presents do bargain and sell, to John R. Young and Geo. W. Newman, comprising the firm of Young & Newman, of Philadelphia, Penna., all the tobacco unmanufactured and in process

of manufacturing, cigars, labels, boxes, fixtures for manufacturing cigars, and all the fixtures and goods of every kind and description, belonging to said firm of Scott & Clark, located at No. 164 Susquehannah street, in Binghamton, N. Y., together with all the personal property of every kind and name belonging to said firm of Scott & Clark. Said bill of sale is made by said firm in consideration of $1,227.00, and $73.00 costs of attachment, in all $1,300.00, due said Young & Newman by said Scott & Clark for notes given to secure said goods above set forth, and to secure the other creditors that Scott & Clark are owing, and said goods are to be held and collected by said Young & Newman for their own purpose and benefit, and to secure other creditors.

"Dated Binghamton, N. Y., December 20th, 1889.

"Scott & Clark,
"Per Lyman Clark."

The notes owing by Scott & Clark to the plaintiffs were surrendered to Mr. Clark at the time of the execution and delivery of the writing. The keys of the factory were delivered to Mr. Newman, and he made an inventory of the stock and property in the factory, after which he locked up the building, and left for the night.

Among the other creditors of Scott & Clark was one Frank Keyes, to whom they were indebted in a sum exceeding $1,500. Mr. Keyes obtained a judgment against Scott & Clark December 20, 1889, and an execution was issued thereon, and placed in the hands of the defendant. When Mr. Newman returned to the factory on the morning of December 21st, he found it unlocked, and the defendant in charge, who told him that he had levied on the property of Scott & Clark by virtue of the execution in favor of Keyes. The defendant refused to turn over the property to the plaintiffs, and subsequently sold it under said execution.

This action was brought by the plaintiffs against the defendant for conversion of the goods so levied upon by the defendant, and an answer was interposed by the defendant. The action was first tried in February, 1891, and resulted in a verdict of a jury in favor of the defendant. After the trial a motion was made on a case and exceptions for a new trial, which was granted. The defendant appealed from such order to the general term of the supreme court, where the order granting a new trial was affirmed. 77 Hun, 395, 28 N. Y. Supp. 881. The action was again tried in May, 1895, and resulted in a verdict of a jury in favor of the plaintiffs. A motion for a new trial upon a case and exceptions was made and denied, and an appeal was taken from such judgment and order, and the same were reversed by the appellate division of this court, and a new trial ordered. 33 App. Div. 261, 53 N. Y. Supp. 656. The action was again tried in September, 1899, and at the close of the plaintiffs' case the court, on the defendant's motion, granted a nonsuit, and the complaint of the plaintiffs was dismissed. A motion was made for a new trial, which was denied, and this appeal is from the judgment and order so entered in favor of the defendant.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

T. B. Merchant, for appellants.
Harvey D. Hinman, for respondent.

CHASE, J. This action grows out of a struggle between two creditors of an insolvent firm in an effort to obtain priority in the payment of their claims out of the assets of the insolvents. The claimed indebtedness to the creditors, respectively, is just and honest. An insolvent debtor has the right to sell and transfer the whole or any portion of his property to one or more of his creditors in payment of or to secure his debts, when that is his honest purpose, although the effect of the sale or transfer will be to place his property

beyond the reach of other of his creditors, and render their debts uncollectible. That right existed at common law, as an incident to the right of property. It was as complete and perfect as the right to acquire and enjoy it. Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532. If, however, a transfer is made by debtors upon the trust that the grantee shall convert the property into money, and from the proceeds pay the indebtedness of the grantors, it is a general assignment, and must be executed in conformity with the statutes relating to assignments for the benefit of creditors. Britton v. Lorenz, 45 N. Y. 51. Scott & Clark did not own any real estate. The writing purports to sell all the fixtures and goods of every kind and description belonging to said firm, * * * together with all the personal property of every kind and name belonging to said firm." Another paper was executed after the levy by the defendant, purporting to transfer the accounts of said firm to the plaintiffs. It does not appear why the subsequent transfer of the accounts was made, as the first writing would seem to include the accounts. 18 Am. & Eng. Enc. Law, p. 408. That it was the intention of the parties to include the accounts is shown by the fact that the plaintiffs took the books of account into their possession on December 20th, and removed them from the factory. The writing does not purport to be a mortgage, and the plaintiffs do not now claim that it was given as a collateral security. It purports to be a sale. That it was intended as a transfer of the title appears from the fact that there was a complete surrender by Scott & Clark of all the property to the plaintiffs. One of the plaintiffs, immediately after the delivery of the writing, told the foreman of the factory that he had purchased the place, and that he would stop work for the time being. In the morning, when the levy was made by the defendant, one of the plaintiffs said to the defendant: "You have no right to this place. This belongs to me. Scott & Clark have no interest in it." At the sale by the defendant the attorney for the plaintiffs forbade the sale, upon the ground that the property belonged to Young & Newman. When this action was commenced the plaintiffs alleged in the complaint, under oath, that they were the owners of the property therein specifically described, being the property in dispute. The plaintiffs have only received $58 from the book accounts. The total amount of the property of Scott & Clark, exclusive of the book accounts, was inventoried by the plaintiffs at $2,140.74. One of the plaintiffs on this trial testified: "The inventory taken by me there at that time is the fair market value of the property. * * * The property inventoried there was worth at that time the values that were placed on it to a cent."

The determination of this case depends upon the legal effect of the writing so given to the plaintiffs. Sales are transfers in the ordinary course of business; assignments commonly grow out of the embarrassments or suspension of business. A sale is usually for a consideration, actually paid or agreed to be paid, and created or passing simultaneously; an assignment is in most cases for a consideration already executed as for a precedent or subsisting debt. An

important distinction between the two modes of transfer arises out of the character of a trust, which belongs to an assignment. A sale is, on delivery of the thing sold and receipt of the consideration, a complete transaction, passing absolutely and irrevocably all the seller's interest in the subject of it, without reversion or return under any circumstance. An assignment is likewise an absolute conveyance, by which both the legal and equitable estate is devested out of the grantor, but the title vested in the assignee is subject to the uses and trusts in favor of the creditors. Burrill, Assignm. § 4. It is not essential, however, that a trustee should be named as such in the instrument; and when the creditor undertakes, under an agreement with the assignor, to sell the property, and apply the proceeds to the payment of his own and other debts of the assignor, and refund the surplus, he becomes a trustee, and the transaction amounts to a voluntary assignment. Burrill, Assignm. § 3. A sale has been generally distinguished from an assignment by the absence from it of the trust element which is essential to assignments. In a sale of property there is a fixed price, but no trust, while in an assignment there is a trust, and no fixed value given to the property. 3 Am. & Eng. Enc. Law, p. 13. There is a broad and well-defined distinction between a general assignment for the benefit of creditors and a deed or bill of sale. The former is a transfer by a debtor of his property to another in trust to sell and convert into money, and distribute the proceeds among his creditors, and it implies a trust, and contemplates the intervention of a trustee. The others import an absolute sale and transfer of the title, to be held and enjoyed by the purchaser without any attending trust. Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532. A "general assignment," in its ordinary legal significance, means an assignment by a debtor transferring all his property in general terms to an assignee in trust for all his creditors. People v. Mercantile Credit Guarantee Co., 55 App. Div. 594, 67 N. Y. Supp. 447. A reference to some of the authorities, relied upon by the plaintiffs as sustaining the writing here in controversy, is necessary for the purpose of showing that they were each decided by reason of the existence of facts differing radically from the facts shown in this case. In Kelly v. Babcock, 49 N. Y. 318, there was a transfer of property for a fixed price, part of which was applied to pay indebtedness of the grantees, and it was provided in the instrument that the balance might be paid to and among the creditors of the firm, and the surplus, if any, to the firm. It was held by the court that the sale was an absolute one, and that the balance remaining unpaid of the purchase money could be reached by creditors, and that the sale was valid and legal. In Brown v. Guthrie, 110 N. Y. 435, 18 N. E. 254, a debtor and the defendant, a creditor, entered into an agreement in and by which it was recited that the debtor owed the defendant $980.79, and that the debtor was also indebted to other persons in a large amount, and that he owned personal property worth $2,500, unincumbered, and that he desired an additional loan of $1,200, and it was therein agreed that the debtor would execute to the defendant notes to the

70 N.Y.S.—36

amount of $2,400, and secure them by a chattel mortgage on all the goods and chattels owned by him. The creditor was to cancel the old notes of $980.79, and to furnish to the debtor an additional loan of $600 within 20 days, and assume payment of, and thereafter pay, such notes and accounts then owing by the debtor to other parties, as the debtor should direct, to the amount of $619.21. The notes and chattel mortgage were executed, the old notes were canceled, and defendant advanced the $600, and a statement was made by the debtor to the defendant of the persons to whom he was indebted, and whom he desired should be paid said amount of $619.21, and the defendant paid thereon $401.28. The court held that this was not a general assignment; that it was in form an absolute sale, upon a chattel mortgage given for a fixed and agreed consideration; that the material and essential characteristic of a general assignment is the presence of a trust; the assignee is merely a trustee, and not absolute owner; he buys nothing, and pays nothing, but takes title for the performance of trust duties; that there was no such element in the transaction between these parties. In Hine v. Bowe, 114 N. Y. 350, 21 N. E. 733, a firm executed to the plaintiff a bill of sale of the firm property at an agreed price, and the plaintiff executed an instrument in return, by which he agreed to cancel his indebtedness against the defendant and now other debts of the firm, not exceeding the sum named. Held not to be a general assignment. In Manning v. Beck, 129 N. Y. 1, 29 N. E. 90, 14 L. R. A. 198, an insolvent debtor gave to his son a bill of sale in payment of a debt due the son, and his assumption of certain indebtedness of the father, which he agreed to pay, and also the payment of a small amount in cash to the father. The consideration of the bill of sale was ample, and the son was solvent. The following day the father made a general assignment. The son had no knowledge of the contemplated assignment or of any fraudulent intent. The bill of sale was upheld. In Maass v. Faulk, 146 N. Y. 34, 40 N. E. 504, insolvent debtors transferred to three banks all the goods, wares, and merchandise, stock in trade, and fixtures of Faulk Bros. & Co., in their store, "to have and to hold to the said banks, as security for the said indebtedness to them, respectively, with authority to the said banks to hold and sell the same at public or private sale, * * * and after payment of expenses of such sale, and the said indebtedness to said banks, with interest in full or ratably, * * * to render the overplus to said firm or its assignee." Held, that this was a valid transfer, notwithstanding that subsequent transfers were made including all the property of debtors. In Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532, an insolvent debtor transferred to a creditor all of his property, real and personal, of an agreed value of $21,- 790.70, in payment of indebtedness to the creditor to the extent of the amount of the agreed value of the property transferred. The transfer was upheld. In Dodge v. McKechnie, 156 N. Y. 514, 51 N. E. 268, an insolvent debtor transferred to a banking firm and to his wife all his stock of goods in a specified place, by an instrument which purports to convey an absolute title, and directed that from

the proceeds the banking firm be first paid, and that his wife have the balance then remaining. It was not shown that there was more than sufficient property to pay the honest debts of the grantors in the bill of sale, and the transaction was upheld. In Delaney v. Valentine, 154 N. Y. 692, 49 N. E. 65, a debtor executed a chattel mortgage to a creditor to secure her debt, and also the indebtedness of certain other specified creditors, and empowered her, in default of payment, to sell the mortgaged property, and out of the proceeds of the sale to pay the debts mentioned and interest, and the expenses of the sale, rendering the overplus, if any, to the mortgagor. On the same day he transferred to another person, being one of those named as a creditor in the chattel mortgage, certain accounts or choses in action as collateral security for the payment of a portion of the debts secured by the said chattel mortgage, and also to secure the debts of certain other named creditors. All of the debts mentioned were honest debts of the mortgagor, and the mortgagor was then insolvent. The chattel mortgage and transfer were upheld. It will be seen that these transfers are upheld either by reason of their being intended as collateral security, or, in cases where they were not intended as collateral security, a price was fixed for the goods sold, and a definite agreement made as to how the same should be paid. In this case we have an absolute transfer of property that the plaintiffs admit was worth much more than their claim. It was not made as a collateral security, but for their own benefit, and the benefit of the other creditors. No price was agreed upon for the property, and it was not made for the purpose of paying specified claims. It was a transfer of all the firm assets for the benefit of all the firm creditors, and it seems to us to be exactly such a transaction as the general assignment law was intended to reach and make impossible, except in the way pointed out by such statute. The judgment is affirmed, with costs. All concur.